Commonwealth *v.* Przychodski, Appellant.

Argued November 8, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Harold K. Wood,* for appellant.

*John E. Stively, Jr.,* Assistant District Attorney, with him *Joseph G. McKeone,* District Attorney, for appellee.

OPINION BY ERVIN, J., January 14, 1955:

Appellant was convicted in a summary proceeding before a Justice of the Peace for engaging in the business of buying and selling swine, as a dealer or broker, without being duly licensed by the Department of Agriculture as provided by the Act of June 22, 1931,

P. L. 650, 3 PS §432. After hearing de novo appellant was found guilty of the offense charged and he was sentenced to pay a fine of fifty dollars ($50.00) and the costs of prosecution. This appeal followed.

The statement of facts contained in the opinion of the learned judge of the court below, stipulated to be correct, and hereby adopted, is as follows: "The defendant, now 27 years of age, has been principally concerned from boyhood with the raising of pigs. Since 1949 he has been engaged in the business of buying, fattening and selling hogs as a livelihood. Since 1949 his practice has been to use pig pens upon the lands of others which they occupied as "pig farms," in consideration of which he cleaned the pens and furnished food for the pigs of those pig raisers. In the pens, shoats bought or bred from sows owned by him were raised and fattened for eight or nine months with surplus bakery products collected by him and with garbage and some grain otherwise obtained by him, and were then sold. During the year 1952, he so raised and sold approximately 300 hogs for $2,500.00 Following the same pattern in June, 1953, the defendant while living in Philadelphia, bought some 150 to 175 shoats of 40 to 100 pounds in weight from William M. Miller, which, with six or more sows, he kept in several pens upon land in Darby Township, Delaware Co., Pa., rented by John Buchanan from Robert Lowrey and used by Buchanan for pig raising. The defendant fed the shoats bread or other surplus bakery products, some garbage and cheap grain and after about nine months sold them and some sows, as hereafter recited. He paid for the use of the pens by his labor cleaning all of Buchanan's pens, by feeding some of the bakery products to Buchanan's pigs, by loading trucks with garbage collected by the latter in Philadelphia.

"On July 21, 1953, he sold at public auction 33 of the hogs so raised, these weighing with 1 sow an average of 360 pounds, through Exton Auction Livestock, Inc. [in Chester County], a commission agent, for net proceeds of $2,203.29. On July 28, that year, he sold at the same place 41 of these hogs, averaging 310 pounds for net proceeds of $2,477.06. Likewise, on August 4, he sold 6 sows for net proceeds of $359.45; on August 25, 9 hogs and sows averaging 330 pounds for $653.67; and on September 8, 11 averaging 340 pounds, for $661.25. The defendant never has obtained a license as a dealer or broker in animals, as required by the Act of 1931, as amended, supra. These sales are the foundation of convictions . . . from which the defendant has appealed."

Sec. 2 of the Act of June 22, 1931, P. L. 650, provides, inter alia, that "no dealer or broker shall engage in or carry on business as such unless duly licensed as hereinafter provided."

Sec. 1(c) of the aforesaid Act, as amended April 16, 1943, P. L. 59, 3 PS §431, provides: "The word 'dealer' or 'broker,' as used in this act, shall mean any person, copartnership, association or corporation engaged in the business of buying, receiving, selling, exchanging, negotiating, or soliciting the sale, resale, exchange or transfer of any animals . . . ." Clause (d) of Sec. 1(c) further provides that the words "dealer" or "broker" shall not be construed to include ". . . that part of the business of a farmer which consists of buying or receiving animals for grazing and feeding purposes and the sale or disposal of such animals after the grazing and feeding period, or the sale by a farmer of any surplus or unprofitable animals."

Appellant contends that he engaged in the business of buying and selling hogs as a "farmer" and that he

therefore comes within the exclusion of clause (d) Sec. 1(c) of the Act of June 22, 1931, P. L. 650, as amended, and was not required to obtain a license.

The contention of appellant that he was a "farmer" at the time of the alleged offenses is without merit. As stated in *Marple Township v. Lynam,* 151 Pa. Superior Ct. 288, 30 A. 2d 208: "The word 'farm' has a suggestive significance apart from any explicit or restricted meaning and even in a popular sense is applied to land used for any one of a variety of purposes. Webster (International Dict. 2d Ed.) defines 'farm' as 'a piece of land held under lease for cultivation; hence, any tract of land . . . devoted to agricultural purposes, generally under the management of a tenant or owner; any parcel or group of parcels of land cultivated as a unit.' In the Century Dictionary it is defined as 'A tract of land devoted to general or special cultivation under a single control, whether that of its owner or of a tenant: as, a small farm; a wheat-, fruit-, dairy-, or market farm.' 'Farming' is defined as 'The commercial production of any plant (even horticultural) or annual which has economic value.' " Moreover, the Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533, provides that words used in a statute shall be construed according to their common and approved usage.

In the instant case appellant neither owned nor leased any land for the cultivation of crops or other agricultural pursuits. The undisputed facts clearly reveal that he used pig pens upon the lands of others which they occupied as "pig farms" and in exchange therefor he cleaned the pens, furnished food for all the pigs kept at these places, and loaded trucks with garbage collected in Philadelphia. On the basis of his use of pig pens on the lands of others appellant cannot be classified as a "farmer" as that term is com-

monly used and understood. See *Whitpain Township v. Bodine,* 372 Pa. 509, 94 A. 2d 737.

It is also clear from the literal wording of clause (d) of Sec. 1(c) of the Act of June 22, 1931, as amended, supra, that only the business of buying and selling hogs which is "part of the business of a farmer" is excluded in determining whether or not the person so engaged is not included within the definition of "dealer" or "broker" and therefore is not required to obtain a license. As stated in the opinion of the court below: "The business of buying and selling after feeding here engaged in by the defendant was not even in his view a 'part of the business of a farmer'— it constituted the entire business of the defendant. He says he was a 'pig farmer.' As his brief states it: he was a 'farmer in purchasing shoats, fattening and raising them and . . . he continued to be a farmer when he sold them'. If this brings his business within clause (d) it would make that clause read: (d) that part of the business of buying animals, fattening and selling them after the feed period 'which consists of buying animals . . . for feeding purposes and the sale . . . of such animals after the . . . feeding period, or the sale by a "pig farmer" of any surplus or unprofitable animals' . . . all of which is palpably absurd." We are in agreement with this conclusion. Furthermore it must be presumed that the legislature did not intend a result that is absurd, impossible of execution, or unreasonable. See Statutory Construction Act, §52, 46 PS §552; *Heinlein, Exrx., v. Allegheny County,* 374 Pa. 496, 98 A. 2d 36.

Appellant also contends that the statute here involved must be strictly construed since it contains penal provisions. We agree with the conclusion of the learned judge of the court below that "The provisions of clause (d) are unambiguous in meaning and

the intention of the legislature is plain." Where, as here, the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory construction and interpretation and the statute must be given its plain and obvious meaning. *Muldoon Unemployment Comp. Case,* 170 Pa. Superior Ct. 625, 90 A. 2d 599; see Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551.

We are all agreed that appellant was engaged in the business of buying and selling swine as a dealer or broker and not as part of the business of a farmer, and that his failure to obtain a license from the Department of Agriculture was a violation of the Act of June 22, 1931, P. L. 650, as amended.

Judgment of sentence is affirmed.