## Commonwealth v. Kemp

*John Driscoll, district attorney,* and *Emily Smarto, assistant district attorney,* for the Commonwealth.
*John Ceraso, Sara Mandelbaum,* and
*David Millstein,* for defendant.

LOUGHRAN, *J.,* December 16, 1992—

## HISTORY

The defendant was arrested on August 21, 1991, and charged with recklessly endangering another person in the within case. Prior to the preliminary hearing on September 20, 1991, the Commonwealth moved to amend their complaint to include the charge of V.C.S.D.D. & C.A. (delivery of a controlled substance).

The Commonwealth alleged that the defendant, an expectant mother, had used cocaine prior to giving birth to a child and that the baby had cocaine "delivered" to it, through the umbilical cord. The Commonwealth also alleged that the conduct of the defendant in using the cocaine prior to the birth of her child placed the newborn boy in danger of death or serious bodily injury.

After the defendant was bound over for court at the end of the preliminary hearing, the defendant filed a motion for habeas corpus via her local counsel, John D. Ceraso, Esq. Judge Ackerman on August 11, 1992, set the matter for argument for the September 1992, Criminal Motions Court. The court administrator assigned this matter to this court for a hearing on October 15, 1992. At that hearing the Commonwealth again asked to amend the information to include the charge of endangering the welfare of children, which was granted by the court.

Defense counsel Ceraso indicated to the court that the American Civil Liberties Union was going to file a brief "amicus curiae" and enter the case as co-counsel for the defense. The matter was continued because of the late

amendment and in order for the court to hear all arguments of the defense for November 18, 1992.

Attorney Sara L. Mandelbaum's motion for admission to the court, "pro hac vice" was made by local counsel, David Millstein, Esq., on behalf of the New York American Civil Liberties Union and was granted by the court. Attorney Witold J. Walczak also appeared at argument on November 18, 1992, on behalf of the ACLU of Pennsylvania. The defendant is now represented by four attorneys of record. Oral arguments were heard and briefs were submitted on or before November 18, 1992. The matter was taken under advisement—hence the delay in this opinion.

## OPINION

The defendant first argues that the charges should be dismissed because Westmoreland County's district attorney's construction of 18 Pa.C.S. §2705 (recklessly endangering another person) and 18 Pa.C.S. §4304 (endangering the welfare of a child) violates legislative intent and rules of construction when interpreting criminal statutes.

In Pennsylvania, it is well settled that where legislative intent is apparent from the language of a statute, there is no need to resort to rules of statutory construction. See, e.g., *Commonwealth v. Przychodski,* 177 Pa. Super. 203, 110 A.2d 737 (1955). That principle applies with particular force to statutes proscribing criminal conduct; hence Pennsylvania's law mandates that penal statutes be strictly construed. Statutory Construction Act of 1972, December 6, 1972, P.L. 1339, no. 290 3(b)(1); 1 Pa.C.S. §1928(b)(1); see *Commonwealth v. Hill,* 481 Pa. 37, 391 A.2d 1303 (1978).

The Commonwealth thus bears a heavy burden and one which it cannot meet: Nowhere in section 2705 or section 4304 did the Legislature suggest, much less explicitly provide, that a woman may be held criminally liable under statutes that prohibit "recklessly endangering another person" or "endangering the welfare of a child," respectively, for allegedly ingesting cocaine while pregnant. The facts, even if true, do not constitute unlawful conduct under the statutes charged; therefore the information should be quashed.

Section 2705 makes it unlawful to "recklessly engage in conduct which places or may place another *person* in danger of death or serious bodily injury." (emphasis added) The Pennsylvania General Assembly has explicitly defined the word "person" for purposes of statutory construction in a way that does *not* include a fetus or live birth. 1 Pa.C.S. §1991. This provision states, in pertinent part:

"The following words and phrases ... unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section...

"'Person.' Includes a corporation, partnership, and association, as well as a natural person."

Because the context does not "clearly indicate otherwise," section 1991, particularly in conjunction with the requirement that penal statutes be strictly construed, precludes the district attorney from advancing the theory that the term "person" should be interpreted to include a fetus or live birth. Cf. *Welch v. Commonwealth of Kentucky*, no. 90-CA-1189-MR, slip op. (Ct. App. February 7, 1992) (reversing a conviction of a woman for prenatal drug use for criminal abuse in recognition that "conspicuously absent in this statute is any language referring to a fetus or unborn child").

Moreover, Title 35, the Health and Safety Code of which the delivery statute is a part, explicitly defines "person" as "individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity." 35 P.S. §780-103. Nowhere in that list did the General Assembly see fit to include "fetus," "unborn child" or any similar term. Nowhere in the laws of Pennsylvania is the term "person" used as a substitute for, or as inclusive of, a conceptus, fetus or live birth. Rather, when the legislature enacts laws pertaining to the unborn, it does so explicitly. For example, section 3203 of the Abortion Control Act provides for the following definition of its terms:

"Unborn child" and "fetus." Each term shall mean *an individual organism of the species homo sapiens from fertilization until live birth." 18 Pa.C.S. §3202 (emphasis added)*

Similarly, it has been held that the term "human being," as used in the criminal homicide statute, "means a person who has been born alive as those words are commonly understood so that the act of feticide, as distinguished from abortion, is neither murder nor manslaughter in Pennsylvania." *Commonwealth v. Brown*, 6 D.&C.3d 627 (1978).

The same is true of the plain language of the child endangering statute, 18 Pa.C.S. §4304, which makes it unlawful to "knowingly endanger the welfare of a child under the age of 18 by violating a duty of care, protection or support." As with the term "person," the General Assembly has explicitly defined "child" as follows: "'child' or 'children.' Includes children by birth or adoption." 1 Pa.C.S. §1991. If the legislature had intended this definition to include "fetus" or "live birth," it would have said so.

The prosecution has failed to allege facts constituting endangering the welfare of a child because it does not—as it cannot—allege an essential element of that crime—that the alleged victim was, at the time of the offense, a "child under 18 years of age." First, it is clear under Pennsylvania law that courts must give the terms of a statute their "commonly accepted meaning." 1 Pa.C.S. §1903(a); see, e.g., *Commonwealth v. Cameron*, 247 Pa. Super. 435, 372 A.2d 904 (1977), quoting *Commonwealth v. Bristow*, 185 Pa. Super. 448, 138 A.2d 156 (1958). Section 1903(a) unequivocally states that "[w]ords and phrases shall be construed ... according to their common and approved usage." Second, it is well settled under federal law that "absent an explicit legislative statement the term 'child' does not include a fetus." *Wynn v. Carey*, 599 F.2d 193, 195 (7th Cir. 1979), citing *Burns v. Alcala*, 420 U.S. 575, 578-81 (1975).

Nor can the prosecution satisfy the specific intent requirement of the statute. See, e.g., *Commonwealth v. Miller*, 411 Pa. Super. 33, 600 A.2d 988 (1992); *Commonwealth v. Campbell*, 398 Pa. Super. 116, 580 A.2d 868 (1990); *Commonwealth v. Cardwell*, 357 Pa. Super. 38, 515 A.2d 311, 314 (1986) *allocatur denied*, 527 A.2d 535 (1987). As the court held in *Cardwell*, the:

"[E]vidence is sufficient to prove the intent of the offense endangering the welfare of a child, 18 Pa.C.S. §4304, when the accused is aware of his or her duty to protect the child, is aware that the child is in circumstances that threaten the children's physical or psychological welfare, and has either failed to act or has taken actions so lame or meager that such actions cannot reasonably be expected to be effective to protect the child's physical or psychological welfare." *Cardwell* Most significantly, the court went on to hold that *"[i]f proof fails on any one of*

*these prongs, the evidence must be found insufficient."*
*Id.* (emphasis added)

A New York appellate court recently rejected a similar attempt to apply a child endangering statute to prenatal conduct. *People v. Morabito,* slip op. (Ontario County Court, September 24, 1992). In affirming the lower court's dismissal of the charge, the *Morabito* court held that the term "child" (as used in the endangering statute) plainly applied to born children and not to fetuses:

"Neither the courts' traditional broad reading of the endangering statute nor the complementary theory that allows endangering to be constituted by a continuing course of conduct allows the court to extend the reach of the statute to allow a fetus to be included within the definition of child for the purpose of this section....

"It is further clear that where the legislature has intended to include a fetus within the ambit of [sic] specific statutory provision it has made specific statutory provision for the fetus." *Id.,* slip op. at 2-3. See also, *Reyes v. Superior Court,* 75 Cal. App.3d 214, 141 Cal. Rptr. 912 (4th Dist. 1977) (child endangering statute not applicable to fetus or unborn child).

Similarly, the defendant correctly argues that the district attorney's construction of 35 P.S. §780-113(a)(30) (delivery of a controlled substance) also violates the Legislature's intent and the Rules of Statutory Construction.

The district attorney is unable to show, as he must, that the plain language of 35 P.S. §780-113(a)(30) was intended to reach prenatal conduct: Nowhere does this provision mention, much less explicitly state, that the flow of blood from one circulatory system to another—the *only* "conduct" the Commonwealth purports to punish by this prosecution—may constitute a criminal offense. Indeed, the blood flow from mother to live birth here

at issue—assuming the district attorney is able to prove that it occurred at all—would have involved neither a "controlled substance," nor a "delivery," nor a "voluntary act" as those terms have been defined by the Pennsylvania General Assembly or judiciary.

That subsection prohibits in pertinent part, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act...." The Legislature has defined the term delivery as "the actual, constructive or attempted transfer *from one person to another* of a controlled substance..." 35 P.S. §780-102 (emphasis added) See also, *Commonwealth v. Swavely,* 382 Pa. Super. 59, 554 A.2d 946 (1989).

Courts in other states have uniformly dismissed charges against women for "delivery" of a controlled substance through the umbilical cord. *Johnson v. Florida,* 602 So.2d 1288 (Fla. 1992) (rejecting attempt to apply delivery statute to alleged flow of blood from mother to live birth); *People v. Hardy,* 188 Mich. App. 305, 469 N.W.2d 50 (Mich. App. 1991).

In *Johnson,* the Florida Supreme Court noted that "no other jurisdiction has upheld a conviction of a mother for delivery of a controlled substance to an infant through either the umbilical cord or an *in utero* transmission ... the court declines to walk down a path that the law, public policy, reason and common sense forbid it to tread." *Johnson* at 1296.

As was true in *Johnson,* it can hardly be disputed that "delivery," as it is here used, requires both transfer to another person as that term is defined in 1 Pa.C.S. §1991 and some willful voluntary act. Indeed, under Pennsylvania law, "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of

which he is physically capable." 18 Pa.C.S. §301(a). Yet, the inevitable, biological flow of blood is surely not a "voluntary act" within the meaning of the Code.

In short, this court need look no further than the plain meaning of section 780-113(a)(30) to determine that the alleged "delivery" in this case is not an "act" that has been proscribed by the Pennsylvania General Assembly.

Additionally, the defendant correctly argues that the information as twice amended should be quashed because the prosecution violates the defendant's rights to due process guaranteed by the United States and Pennsylvania Constitutions.

It is axiomatic that, as a matter of due process, a criminal statute must be stated in terms that are reasonably definite so that a person of ordinary intelligence will know what conduct is prohibited. U.S. Constitution Amendment XIV, section 1; Pa. Constitution Article I, section 9. See also, *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976). The Pennsylvania Legislature has codified the due process requirement of fair notice, providing that it is one of the general purposes of the penal law "[t]o give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense." 18 Pa. C.S. §104(4). Thus, a penal statute and its terms, in order to be constitutional, must be "sufficiently explicit to inform those who are subject to it, what conduct on their part will render them liable to its penalties." *Heinbaugh* citing *Connally v. General Construction Co.*, 269 U.S. 385 (1926).

In disregard of this fundamental principle of constitutional law, for the first time in Pennsylvania history, and without any notice whatsoever, the district attorney's office has decided to prosecute a woman for her conduct during pregnancy. This action is unprecedented in Penn-

sylvania, rejected in other states, and premised on statutes that could not, on their face, be read to reach prenatal behavior.

Courts that have considered this issue of fair notice in other jurisdictions have held that prosecutions of women for prenatal drug use clearly violate due process. As the New York Appellate Court recently stated in *People v. Morabito*: "To the extent that a pregnant woman would be required, at peril of her life, liberty, or property to speculate concerning the applicability of the (child endangering) statute to her conduct it is clear that due process also proscribes the interpretation advocated by the people."

Along these same lines the defendant argues that the prosecutor's interpretation of the Pennsylvania statute, section 2705, section 4304 and section 780-113(a)(30) is also unconstitutional because of vagueness.

The process also requires that a criminal statute be certain and definite in its terms. *United States v. Harriss,* 347 U.S. at 617; *Lanzetta v. New Jersey,* 306 U.S. 451 (1939).

"The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course is lawful for him to pursue."

*Connally v. General Construction Co.,* 296 U.S. at 393; see *Rose v. Locke,* 423 U.S. 48, 50 (1975). A statute will be held void for vagueness if individuals of ordinary intelligence must guess at its meaning. *Broadrick v. Oklahoma,* 413 U.S. 601, 607 (1973); *Lanzetta v. New Jersey,* 306 U.S. at 453; *Waters v. McGuriman,* 656 F. Supp. 923 (E.D. Pa. 1987).

If the statutes at issue are applied to women's conduct during pregnancy, they could have an unlimited scope

and create an indefinite number of new "crimes." For example, many over-the-counter cold remedies and sleep aids contain warnings that pregnant women should not use them without medical supervision, yet doing so cannot constitute a crime. It is also common knowledge that cigarette smoking and the use of alcohol during pregnancy may cause harm to the fetus. It is, therefore, illogical to punish prenatal drug use to the exclusion of such other behaviors, if, indeed, the focus is on the resulting harm to the fetus. In short, the district attorney's interpretation of the statutes, if validated, might lead to a "slippery slope" whereby the law could be construed as covering the full range of a pregnant woman's behavior—a plainly unconstitutional result that would, among other things, render the statutes void for vagueness.

It is axiomatic that courts are obligated to avoid construing a particular statute so as to achieve an absurd or unreasonable result. 1 Pa.C.S. §1922(1) ("General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"); *Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 647 (1982) (same). Courts must construe statutes with an eye toward what reason and logic dictate to be the legislative intent. *Id.* Yet, the prosecution's interpretation of the criminal statues at issue and the dangerous policy of criminally prosecuting pregnant women for their alleged drug use threaten such serious health consequences for pregnant addicts and their fetuses that the Legislature could not possibly have intended such an unreasonable application of this penal law.

Criminal prosecution of women for their conduct during pregnancy fosters neither the health of the woman nor her future offspring; indeed, it endangers both. See, e.g., *Johnson v. Florida,* 602 So.2d at 1295-96, quoting *Johnson v. State,* 578 So. 2d 419 Fla. 5th D.C.A. (1991) (Sharp, *J.,* dissenting); *People v. Morabito,* slip op. at

64

4. Criminal prosecution cruelly severs women from the health care system, thereby increasing the potential for harm to both mother and fetus. Pregnant women threatened by criminal prosecution have already avoided the care of physicians and hospitals to prevent detection. Thus, even through the Commonwealth's asserted objectives may be laudable, its enactments should not be interpreted to create more harm than it seeks to prevent.

Finally, it is not the purpose of the courts to make legislation in the guise of judicial interpretations or construction. Whether to impose a legal duty on the pregnant woman to their developing fetus and the extent of that duty is a matter only for the Legislature in Pennsylvania to be made after thorough investigative study and debate of all the implications of its decision.

## ORDER

And now, to wit, December 16, 1992, after review of the briefs submitted in support of oral arguments, it is hereby ordered, adjudged and decreed that the defendant's motion for habeas corpus is hereby granted and more specifically the defendant's motion to dismiss all charges of recklessly endangering another person, recklessly endangering the welfare of children, and delivery of cocaine are hereby granted.