991 So.2d 116 (2008)
STATE of Louisiana, Respondent
v.
April Nicole ARMSTARD, Applicant.
No. 43,333-KW.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
Rehearing Denied September 11, 2008.
*118 Ronald K. Cook, Monroe, for Applicant.
Jerry L. Jones, District Attorney, Cynthia P. Lavespere, Stephen Sylvester, Assistant District Attorneys, for Respondent.
Before STEWART, DREW and MOORE, JJ.
MOORE, J.
The applicant seeks supervisory review of an order that denied her motion to quash the indictment. Finding that the trial court abused its discretion, we grant the writ and remand to the trial court with instructions to dismiss the indictment.

FACTS
The facts in this record are not such that they evoke sympathy for the defendant. April Nicole Armstard, age 26, gave birth prematurely to her sixth child, a girl, V.M., on February 25, 2007, at LSUMC-E.A. Conway in Monroe. An affidavit in support of the arrest warrant alleges that April was intoxicated when she arrived at the hospital that day, testing positive for cocaine and amphetamines and admitting the use of cocaine and other drugs during pregnancy. The infant was born extremely premature (23 weeks and 5 days) and also tested positive for cocaine and barbiturates. V.M. was immediately placed on life support and transferred to LSUMC in Shreveport where she died on April 25, 2007. The autopsy stated that the cause of death was "complications of prematurity with multiple congenital malformations and acute chorioamnionitis." The latter is a type of bacterial infection affecting pregnant women and their fetuses.
After the infant died, Armstard was arrested on a charge of second degree murder. On June 14, 2007, she was indicted by a grand jury for cruelty to juveniles in violation of La. R.S. 14:93.
On November 2, 2007, defense counsel filed a motion to quash with a supporting memorandum. The memo asserted that Armstard caused no harm to V.M. after she was born, "thus becoming a child," and that the state was trying to create a crime by analogy. The state disputed this, but it agreed that "until the child is born and takes a breath it's not a child." The state argued that after the child is taken from the mother and takes a breath, it is a child even though it is still connected by the umbilical cord. Therefore, the state argued, since the mother had alcohol, cocaine and barbiturates in her bloodstream that were flowing from her body to the child, she was "distributing ... alcohol and/or drugs to the child."
The defense responded that these acts were committed before the child was born, whereas the victim of cruelty to a juvenile must be a "child" at the time the act is committed.
At the hearing on November 26, 2004, the court indicated that the state would have a difficult burden of proving that the quantity of drugs delivered in the short span of time before the cord was clamped "caused the cruelty or suffering that you're prosecuting this lady about." Nevertheless, the court concluded the state was entitled to try to carry that burden. The court denied the motion to quash and this writ application followed.
Armstard contends that the trial court erred in implicitly finding that she had the requisite mental state (criminal intent or criminal negligence) to inflict unjustifiable pain and suffering while giving birth to V.M.; to the contrary, her only actions that harmed V.M. occurred during pregnancy, *119 when the fetus was not legally a "child." She further argues that the trial court erred in denying her motion to quash on equal protection grounds: the charge discriminates against her on grounds of her status as a drug user who gave live birth. Finally, the defendant objects on policy grounds that subjecting pregnant mothers to criminal prosecutions under these circumstances will have the undesirable effect of encouraging pregnant women to obtain abortions, no matter how close to birthing, to avoid criminal prosecution.
The state contends that the trial court correctly denied the motion to quash because the defendant has not shown that the indictment fails to charge an offense punishable under La. R.S. 14:93. The statute defines cruelty to a juvenile as, inter alia, "[t]he intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain and suffering is caused to said child." Id. After the child was born but before the umbilical cord was clamped, the state contends the defendant intentionally and criminally negligently delivered cocaine and barbiturates to the child, and this conduct constituted the crime. The child's condition at birth, it further argues, is ample proof of the pain and suffering caused by the defendant's actions. Accordingly, the sole issue is whether the state has alleged facts in the indictment that can support the offense of cruelty to a juvenile. It argues that the defendant is improperly using a motion to quash to argue the merits of her defense to an indictment charging a valid offense.

Discussion
An appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. State v. Love, 00-3347 (La.5/23/03), 847 So.2d 1198.
The motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, i.e., matters which do not go to the merits of the charge. La. C. Cr. P. art. 531-534; State v. Byrd, 96-2302 (La.3/13/98), 708 So.2d 401, cert. denied, 525 U.S. 876, 119 S.Ct. 179, 142 L.Ed.2d 146 (1998); State v. Perez, 464 So.2d 737 (La.1985); State v. Carter, 42,894 (La.App. 2 Cir. 1/9/08), 974 So.2d 181; State v. Thomas, 28,790 (La.App. 2 Cir. 10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.4/25/97), 692 So.2d 1081. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. State v. Thomas, supra; State v. Perez, supra.
Additionally, we observe that there is an exception to the general rule that a motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, i.e., those matters which do not go to the merits of the charge. In cases in which the state cannot establish an essential element of the offense under any set of facts conceivably provable at trial, the motion to quash is the proper procedural vehicle. State v. Advanced Recycling, Inc., 02-1889 (La.4/14/04), 870 So.2d 984; See also State v. Legendre, 362 So.2d 570, 571 (La.1978) (quashing of a bill of information for aggravated battery was proper when the state alleged that the dangerous weapon used was a concrete parking lot).
In this instance, the bill of indictment charged that the defendant did:

*120 Count 1Cruelty to a Juvenilebetween 01 Sep 2006 and 25 Feb 2007 both dates inclusive
willfully and unlawfully commit cruelty to V.M., a juvenile, by intentional or criminally negligent mistreatment or neglect, contrary to the provisions of R.S. 14:93.
The substance of Armstard's motion to quash is that her alleged criminal conduct or act of cruelty, i.e. pumping blood that was tainted with cocaine or alcohol through the umbilical cord after child birth does not constitute an offense punishable under La. R.S. 14:93. In light of these facts and offense charged in this case, we conclude that the motion to quash was the appropriate procedural vehicle for the defendant to raise objections to indictment, and for the following reasons, we hold that the motion should have been granted.
We begin our analysis with the statutory text and the well-established rules of construction of criminal statutes in this state. The starting point in the interpretation of any statute is the language of the statute itself. State v. Shaw, 2006-2467 (La.11/27/07), 969 So.2d 1233; Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. The articles of the criminal code "cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3; State v. Shaw, supra; State v. Skipper, 04-2137 (La.6/29/05), 906 So.2d 399. Further, although criminal statutes are subject to strict construction under the rule of lenity,[1]State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271, 1274, the rule is not to be applied with "such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute." State v. Shaw, supra, and citations therein; State v. Brown, 03-2788 (La.7/6/04), 879 So.2d 1276, 1280, and citations therein. Consequently, a criminal statute, like all other statutes, should be interpreted so as to be in harmony with and to preserve and effectuate the manifest intent of the legislature; an interpretation should be avoided which would operate to defeat the object and purpose of the statute. Brown, supra, at 1280; State v. Broussard, 213 La. 338, 342, 34 So.2d 883 (1948). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Therefore, where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. State v. Freeman, 411 So.2d 1068, 1073 (La.1982).
In this case, the defendant was indicted on a charge of violation of La. R.S. 14:93, which reads:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, *121 by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
Whoever commits the crime of cruelty to juveniles shall be fined not more than one thousand dollars, or imprisoned for not more than two years, with or without hard labor, or both.
The state contends that all the elements of the statutory offense are met under the facts alleged because the defendant is over the age of 17; V.M. was a newborn child under the age of 17; the act of the defendant in giving cocaine and barbiturates to the child constituted intentional or criminally negligent mistreatment; and it caused the baby's unjustifiable suffering and death. We pretermit consideration of the serious evidentiary issue of whether the amount of cocaine and alcohol passed by the mother to the child in the very short time span after birth could alone have caused the clearly unjustified suffering of V.M., and we focus instead on the alleged "act" constituting "mistreatment."
At the hearing on the motion to quash and in its appellate brief and oral argument before this court, the state contended that the defendant intentionally mistreated or was criminally negligent in mistreating the child by giving her cocaine, alcohol, and other drugs through the umbilical cord after birth, which it argues constitutes cruelty or mistreatment on its face. The state presented the following argument in its brief:
The State's position is that April Armstard knew she was giving her baby cocaine and alcohol via the umbilical cord for which she became criminally liable when her baby was deemed a child by law. Her actions were intentional, criminally negligent mistreatment and/or neglect of her newborn child. She cannot hide behind a fetus. She knew what she was doing and that her actions could cause pain and suffering to her baby.
Neither this statement, nor the indictment itself, clarifies whether the factual basis for the act of mistreatment occurred when she ingested alcohol, cocaine and other drugs, which surely were transmitted to the fetus via the umbilical cord prior to V.M.'s birth, or whether it occurred in the short time span after birth but before the umbilical cord was clamped. The transcript from the hearing on the motion to quash indicates that the state is making the latter allegation; namely, that the criminal conduct constituting the offense occurred after the birth of V.M. The following exchange occurred at the hearing on the motion to quash between the assistant D.A. and the court:
BY MR. SYLVESTER:
That's correct, Judge. Mr. Cook, he assumes that the state is saying that the injuries took place to the child while inside the womb. If that was the case, we couldn't do it. There's case law there, statutory law that says it can't be. However, when that child took a breath, when that fetus took a breath, it went from being unborn to a human being.
BY THE COURT:
So you have thislet's talk about a criminal act. The criminal act that you're complaining about here that you're prosecuting the woman for is the consumption of alcohol and/or drugs? Right?
BY MR. SYLVESTER:
No, sir. It's not the consumption of alcohol or drugs. It's the distributing of those alcohol and/or drugs to the child.

(Emphasis ours). Thus, the alleged criminal conduct constituting the cruelty or mistreatment *122 charged against the defendant was the transmission of alcohol and drugs from her circulatory system to the child via the umbilical cord after V.M. was born and causing unjustified pain and suffering within the meaning of the statute.[2]
Our review of the Louisiana jurisprudence involving the charge of cruelty to a juvenile has revealed no cases where the mistreatment or neglect was based on an involuntary act such as the pumping of blood through the umbilical cord during the birthing process after having earlier ingested drugs or alcohol. On the contrary, all of the Louisiana cases of which we are aware involve some kind of overt act or omission that was intentional or criminally negligent. For example, in State v. Helsley, 457 So.2d 707 (La.App. 2 Cir.1984), this court affirmed a cruelty to a juvenile conviction where the defendant disciplined his 12-year-old daughter by striking her repeatedly with a piece of PVC pipe and a pipe wrench. In State v. Taylor, 31,860 (La.App. 2 Cir. 2/24/99), 733 So.2d 72, we affirmed a cruelty to a juvenile conviction where the defendant violently shook the two-month-old victim. In State v. Burgess, 475 So.2d 35 (La.App. 2 Cir.1985), we affirmed a conviction of cruelty to a juvenile where the defendant burned his two-year-old son with hot water for the purpose of punishment.
In State v. Sedlock, 2004-564 (La.App. 3 Cir. 9/29/04), 882 So.2d 1278, a cruelty to a juvenile conviction was affirmed where defendant kicked a fourth-grade student in the buttocks and then kneed him in the back. In State v. Booker, XXXX-XXXX (La. App. 1 Cir. 2/14/03), 839 So.2d 455, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 476, the first circuit affirmed a second degree murder conviction arising out of cruelty to a juvenile where the four-year-old girl died from hypothermia secondary to malnourishment and battered child syndrome.
Section 8 of the Louisiana Criminal Code defines criminal conduct as follows:
Criminal conduct consists of:
(1) An act or failure to act that produces criminal consequences, and which is combined with criminal intent; or
(2) A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent, or
(3) Criminal negligence that produces criminal consequences.
Each of Louisiana's statutory criminal offenses requires criminal conduct that fits at least one of these three types of criminal conduct. For example, a prosecution for first degree murder under La. R.S. 14:30 requires the kind of criminal conduct described under subsection "(1)" because the offense requires, in addition to the act causing the death of another person, a "specific intent to kill or inflict great bodily harm." The kinds of criminal conduct defined by the legislature as constituting the offense of cruelty to a juvenile include "intentional or criminally negligent mistreatment or neglect" that causes unjustifiable pain and suffering to the child. La. R.S. 14:93. The term "intentional," within the meaning of this statute, is defined *123 as requiring only "general criminal intent," and not specific intent to cause a child unjustifiable pain and suffering. La. R.S. 14:11; State v. Cortez, 96-859 (La. App. 3 Cir. 12/18/96), 687 So.2d 515; State v. Morrison, 582 So.2d 295 (La.App. 1 Cir.1991); State v. Green, 449 So.2d 141 (La.App. 4 Cir.1984). The Louisiana Supreme Court has stated that the term "mistreatment" in La. R.S. 14:93 is understood in its common usage and is equated with "abuse." State v. Comeaux, 319 So.2d 897, 899 (La.1975). Thus the mental element of the crime requires either general criminal intent or criminal negligence or neglect.[3] Both are statutorily defined.
La. R.S. 14:10(2) provides:
General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
The statute provides an alternative to proving that an accused intentionally mistreated or neglected a child. The statute allows the state to prove the accused was criminally negligent in his mistreatment or neglect of the child. See State v. Morrison, supra at 302. Criminal negligence is defined by La. R.S. 14:12 as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
In all the Louisiana cases we have seen involving cruelty to a juvenile, the victim was a child at the time the criminal conduct occurred; that is, each of the acts or omissions that constituted "mistreatment" under La. R.S. 14:93 involved voluntary acts or omissions that caused harm or suffering to a postnatal infant or child at the time the conduct occurred. In this instance, however, when the defendant became intoxicated and when she ingested cocaine and other drugs, V.M. was not yet a "child."[4] As previously noted above, the state conceded that the victim was not legally a "child" at the time Armstard ingested the drugs and alcohol. To avoid this problem, the state has charged that the criminal conduct constituting this particular offense on the child was the defendant's intentional and/or criminally negligent transmission of the drugs through the umbilical cord after the child was born but before the umbilical cord was cut.
The fallacy with the state's theory is that the alleged criminal conduct that comprises intentional or negligent mistreatment or neglectthe "act" of circulating her tainted blood through the umbilical cord to the childdoes not constitute "mistreatment or neglect" because it is neither an "act" nor "failure to act," nor, indeed, "criminal negligence." In order for there to be criminal conduct, even criminal negligence, there must be an act or failure to act, where "act" refers to an external manifestation of will through voluntary muscular movement which produces consequences. See Reporter's Comment, *124 La. R.S. 14:8, "General Comment" and "Theory of the `Criminal Act'," (West 2007). Although, under the statutory definition of criminal conduct, "criminal negligence" is not analytically broken down to an "act" plus "negligence" because, as stated by the reporter, the act and the state of mind are inextricably bound, criminal negligence does require an act or failure to act that is voluntary. Id.
On the other hand, transmission of the drugs and alcohol via the umbilical cord after the child was born was not a voluntary act or something over which a mother giving birth has any control by her will. This plainly negates the prerequisite for criminal conduct. We therefore reluctantly conclude that the conduct constituting the "mistreatment or neglect" in this child cruelty case cannot constitute the offense of cruelty to a juvenile because it was not a voluntary act.
We also conclude, applying the rule of lenity which requires narrow construction of criminal statutes, that the legislature did not intend for the term "mistreatment or neglect" used in La. R.S. 14:93 to include within its reach pregnant mothers who have used drugs or alcohol prior to the birth of the child and later give birth to a child who suffers from the prenatal conduct.[5] Although the defendant in this case was clearly grossly negligent by ingesting cocaine, alcohol and other drugs while she was pregnant, the fetus which she harmed was not a "child" at the time of these acts. La. R.S. 14:2(11) defines an "unborn child" as a human individual from fertilization and implantation until birth, and La. R.S. 14:2(7) defines a "person" to include "a human being from the moment of fertilization and implantation," but La. R.S. 14:93 uses only the term "child," thereby expressly limiting the application of the statute only to the more narrow class of persons who are children. Therefore, applying the rule that the words of a statute are to be given their common and ordinary meaning, we conclude that the word "child" does not include "unborn child" and denotes a more narrow class of human beings than "person."[6]
Our reasoning is further buttressed by The Model Penal Code and the jurisprudence from other states. In his commentary to The Model Penal Code, Professor Dubber states:
The requirement that criminal liability can be imposed only on the basis of *125 conduct is often called the "actus reus" principle.... The Model Penal Code is emphatic about its adherence to the act requirement. Its very first "general principle of liability" proclaims that "[a] person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act or the omission to perform an act of which he is physically capable."
* * *
So to qualify as conduct, behavior must be an act and it must be voluntary.

Markus D. Dubber. Criminal Law: Model Penal Code. New York: Foundation Press (2002). (Emphasis ours). Although The Model Penal Code does not directly define "voluntariness," it does so indirectly by listing acts that do not qualify as voluntary. Similar to the definition in the reporter's comment to La. R.S. 14:8 defining an "act" as "an external manifestation of will" produced by "voluntary muscular movement," section 2.01(2)(d) of The Model Penal Code excludes from voluntary acts any "bodily movement that otherwise is not a product of the effort or the determination of the actor, either conscious or habitual."
The jurisprudence from other states also supports our analysis:
In Johnson v. State, 602 So.2d 1288 (Fla.1992), an adult mother was convicted of delivery of a controlled substance (cocaine) to her twin children through the umbilical cord after their birth. The mother admitted that she had used cocaine the night before the delivery. The Florida Supreme Court quashed the conviction, however, on the question of whether the ingestion of a controlled substance by a mother who knows the substance will pass to her child after birth is a violation of Florida law. The statutory offense forming the basis of the charge made it "unlawful for any person 18 years of age or older to deliver any controlled dangerous substance to a person under the age of 18 years." Fla. Stat. § 893.13(1)(c)1. (Emphasis ours). The state's theory was that the defendant "delivered" cocaine to her twins via blood flowing through the umbilical cord in the 60- to 90-second period after they were expelled from the birth canal but before the cords were severed. The court held that the legislature did not intend for the statutory term "deliver" to include the delivery of the drug by the involuntary act of blood flow from womb to placenta to umbilical cord to newborn after a child's birth.
Similarly, in Com. v. Kemp, 1992 WL 613723, 18 Pa. D. & C. 4th 53 (1992), the Court of Common Pleas of Pennsylvania dismissed the bill of information against the mother charging the crimes of "recklessly endangering another person" and "endangering the welfare of a child," respectively, for allegedly ingesting cocaine while she was pregnant and transmitting the drug through the umbilical cord after the child was born. The court concluded that the facts, even if true, did not constitute unlawful conduct under the statutes charged and quashed the information. The court's rationale for the decision was that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable." 18 Pa. C.S. § 301(a). Yet, the inevitable, biological flow of blood is surely not a "voluntary act" within the meaning of the Code. Com. v. Kemp, supra.
In State v. Gray, 1990 WL 125695, No. L-89-239 (Ohio Ct.App.8/31/90), the defendant was indicted for child endangering based on her use of cocaine during the last trimester of pregnancy. The trial court concluded that the child endangering statute did not apply to this situation and *126 dismissed the charge against her. On appeal, the State of Ohio argued that the trial court had failed to consider the time the fetus is a child and still attached to the mother and the duty of care created at that point. The appellate court concluded that the Ohio General Assembly did not intend to criminalize the passage of harmful substances from a mother to a child in the brief moments from birth to the severing of the umbilical cord, stating:
This court cannot conclude that the General Assembly intended R.C. 2919.22(A) to apply to the circumstances of the present case. It is clear that R.C. 2919.22(A) is intended to impose criminal penalties on parents who through their neglect "create a substantial risk to the health or safety of the child." However, we are not persuaded that the General Assembly intended to make a criminal act the passage of harmful substances from a mother to her child in the brief moments from birth to the severance of the umbilical cord. To construe the statute in this manner would mean that every expectant woman who ingested a substance with a potential for harm to her child, e.g., alcohol or nicotine, would be criminally liable under R.C. 2919.22(A). We do not believe such a result was intended by the General Assembly.
Finally, in Sheriff, Washoe County, Nev. v. Encoe, 110 Nev. 1317, 885 P.2d 596 (1994), the defendant mother was charged with child endangerment, a violation of Nev.Rev.Stat. § 200.508, when her infant son tested positive for methamphetamines soon after birth. The charge was based on the transmission of an illegal substance from mother to child through the umbilical cord after the child was born and before the cord was severed. The state argued that the criminal act of child endangerment occurred in the brief moments after the child was born and the umbilical cord was cut. The court dismissed this view as a strained and radical application of Nev.Rev.Stat. § 200.508 in violation of due process. Citing multiple decisions from other jurisdictions, the court expressly delegated to the legislature the responsibility for proscribing illegal substance abuse by expectant mothers. "If the Nevada legislature intended to criminalize prenatal substance abuse, it would have enacted a statute to that effect."
The courts in the decisions discussed above and numerous others have consistently held that the use of controlled substances by a pregnant mother resulting in the transmission or delivery of the substance to her infant after birth through the umbilical cord, is not conduct which can be criminally prosecuted under a delivery of cocaine to a child or child endangerment statute. For example, see People v. Hardy, 188 Mich.App. 305, 469 N.W.2d 50 (1991) and numerous cases discussed therein.
Finally, we know of only one case in which a state supreme court upheld the state's prosecution of a mother accused of criminal child neglect based on her ingestion of crack cocaine during her pregnancy. In Whitner v. State, 328 S.C. 1, 492 S.E.2d 777 (1997), the South Carolina Supreme Court affirmed the guilty plea conviction of the defendant, holding, inter alia, that a "viable fetus" is a child within the meaning of the child endangerment statute, and the statute gave the defendant fair notice that ingesting cocaine during the third trimester of pregnancy was proscribed.
In this case, however, we were not presented with the question of whether an extremely premature child born after only 23 weeks gestation, and who required immediate and continuous life support was a *127 "viable fetus" or a "child" within the meaning of La. R.S. 14:93.

Conclusion
For the foregoing reasons, we conclude that La. R.S. 14:93 was not intended by the legislature to apply to the facts presented in this case. The conduct charged in this case does not constitute "mistreatment or neglect" within the meaning of the statute, nor does it constitute criminal conduct within the meaning of La. R.S. 14:8. We therefore hold that the trial court abused its discretion by denying the defendant's motion to quash.
Accordingly, the ruling of the trial court is reversed. We remand to the trial court with instructions to grant the motion to quash the indictment.
REVERSED AND REMANDED WITH INSTRUCTIONS.
DREW, J., dissents with written reasons.
DREW, J., dissenting.
The narrow legal inquiry here is whether or not the trial court erred in denying defendant's motion to quash. The majority writes that our current criminal statutes do not address this factual situation. I respectfully disagree.
Cruelty to Juveniles may be committed by general intent or criminal negligence. La. R.S. 14:93; La. R.S. 14:10; La. R.S. 14:11. This dissent will focus on criminal negligence.
During the hours before birth, this expectant mother ingested cocaine, amphetamine, and alcohol. Her actions exhibited reckless disregard for the welfare and safety of the unborn child, and of the baby, once born. For the first moments of the infant's short life, the defendant and the child were attached by the umbilical cord. Immediately after birth, but before the cord was clamped, there can be little doubt that this mother's body continued to pump these poisons into the child's system. The amount was probably not much, but I agree with the prosecutor who essentially asked: "How much would be acceptable?" The answer is zero. After her premature birth, V.M. endured two difficult months of life, solely because of the actions of her mother.
Clearly, it was foreseeable that at some point the birth process would occur. Armstard broke the law by using unlawful drugs. Worse, she ingested the controlled dangerous substances during the gestation of her child. This baby didn't have a chance because of the poisons heaped into her system, both during the pregnancy, and in the first moments after her birth. Shortly after the baby's first breath was taken, the hospital personnel placed the very sick infant on life support, where she remained until her death.
Focusing on an equal protection argument, the majority states this prosecution would criminalize the act of giving birth.
I am looking through the other end of the telescope. This prosecution does not criminalize giving birth; instead it criminalizes:
 the ingestion by a mother of unlawful drugs during pregnancy, which quite foreseeably leads to
 delivery of these poisons into the fetus (before birth) and into the newborn child (after birth, for at least a few moments), which quite likely leads to
 a very sick baby fighting to live, against horrendous odds.
This prosecution, if allowed to go forward, would send out a clear message that a pregnant woman in this state must have some modicum of concern for the little life that is totally dependent upon her.
*128 Our current Louisiana statutes can support a prosecution here.
 La. R.S. 14:93(A)(1) reads, in pertinent part, with our emphasis:
A. Cruelty to juveniles is:
(1) The intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.
 "Unborn child" is defined in R.S. 14:2(A)(11), as follows:
"Unborn child" means any individual of the human species from fertilization and implantation until birth.
 La. Children's Code Article 603(5), reads:
"Child" means a person under eighteen years of age who, prior to juvenile proceedings, has not been judicially emancipated under Civil Code Article 385 or emancipated by marriage under Civil Code Articles 379 through 384.[1]
 "Person" is defined in our La. Criminal Code, La. R.S. 14:2(A)(7), as follows, in pertinent part, with our emphasis:
"Person" includes a human being from the moment of fertilization and implantation....[2]
 "Criminal Negligence" is defined in our La. Criminal Code, La. R.S. 14:12, with our emphasis:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
This child suffered immeasurably because of her mother's drug usage. The first event in this child's life was receiving more drugs and alcohol into her system, a choice made entirely by the child's mother.
The majority's genuine concern is that criminalizing this conduct might lead to abortions by addicted mothers seeking to avoid prosecution. A more likely result, in my view, is that clearly criminalizing this conduct might lead to less drug usage by expectant mothers during pregnancies.
The majority writes that "... [T]ransmission of the drugs and alcohol via the umbilical cord after the child was born was not a voluntary act or something over which a mother giving birth has any control by her will."
On the contrary, this expectant mother had total control over this situation. During the pregnancy, she should not have ingested alcohol and controlled substances. The poor choices of the defendant led to the cruel suffering and death of her own baby.
This issue is complex and gut-wrenching. Any legal discussion of the instant facts must be tested against a recent U.S. Supreme Court case, in which the court ruled that a violation of Fourth Amendment rights occurred when a hospital, without consent of the patient, reported incriminating information to the police, for the purpose of instituting criminal charges against a mother who had given birth in their facility to an addicted baby. See *129 Ferguson v. Charleston, 99-936, 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001).
With the luxury of hindsight, it is arguable that alternate criminal charges could have been more appropriate under these facts,[3] instead of cruelty to juveniles. It would be very helpful for the legislature[4] to address and clarify the criminal ramifications, vel non, of this maternal conduct.
The trial court was correct to deny the motion to quash. With full respect for the opinion of the majority, I dissent.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.
CARAWAY and DREW, JJ., would grant rehearing.
NOTES
[1] The principle of lenity developed on the basis that a person should not be criminally punished unless the law has provided a fair warning of what conduct will be considered criminal. State v. Piazza, 596 So.2d 817 (La. 1992). The rule does not merely reflect a convenient maxim of statutory construction, but is based on the fundamental principle of due process that no person should be forced to speculate whether his conduct is prohibited. Dunn v. United States, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Questions concerning the ambit of a criminal statute should be resolved in favor of lenity. Huddleston v. United States, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).
[2] The state conceded that V.M. was not a "child" within the meaning of La. R.S. 14:93 until after it was born and cited in its brief La. R.S. 40:32(9), which defines live birth as follows:

(9) "Live birth" means a birth in which the child shows evidence of life after complete birth. A birth is complete when the child is entirely outside the mother, even if the umbilical cord is uncut and the placenta still attached. The words "evidence of life" include heart action, breathing, or movement of voluntary muscles.
[3] The word "neglect" in the cruelty to juveniles statute proscribes not mere neglect but "criminally negligent mistreatment or neglect." Only criminally negligent neglect is punishable. State v. Brenner, 486 So.2d 101, 60 A.L.R.4th 1143 (La.1986).
[4] Evidence in the medical record indicates that the defendant's use of cocaine probably triggered the extremely premature birth. Because the infant was born after only 23 weeks' gestation, it had to be put immediately on life support.
[5] As acknowledged by the parties at oral argument, the legislature considered but failed to act on two proposed bills to amend La. R.S. 14:93 that would have criminalized the "intentional or criminally negligent prenatal exposure of an unborn child to a controlled dangerous substance" that results in symptoms or harmful effects or the presence of the substance in the newborn. See HB 1205, 1210, 2008 Reg. Sess. This fortifies our conclusion that the defendant's conduct does not constitute cruelty to a juvenile under existing law.
[6] See Com. v. Kemp, infra, p. 15 wherein the court also noted that "it is well settled under federal law that "absent an explicit legislative statement the term `child' does not include a fetus." Wynn v. Carey, 599 F.2d 193, 195 (7th Cir.1979), citing Burns v. Alcala, 420 U.S. 575, 578-81, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975). Also, in Parks v. Harden, 354 F.Supp. 620, 623-4 (N.D.Ga.1973), the court stated:

"As a matter of semantics, there simply is no way to conclude that the word `child' includes something else which is not a 'child,' namely an unborn child. In legal terms, the unborn child is normally referred to as a fetus, or `quick', or in utero.... In normal conversational usage, `child' does not mean fetus. Plaintiffs wish to say that `child' and `fetus' are interchangeable, which is simply not the case. A woman is not considered to have a child when she is carrying a fetus-she is expecting a child."
[1] There is no definition of "child" in R.S. 14.
[2] It is arguable that during a pregnancy these definitions overlap. But if this is so, does this beg the question as to why do we have homicides and feticides?
[3] For example, perhaps, negligent homicide, La. R.S. 14:32.
[4] In the most recent legislation session, HB # 1205 and HB # 1210 were introduced, each having the purpose of amending R.S. 14:93, by adding Subsection (A)(3), which amendment would have clarified the criminality of fact situations similar to this one. Both bills died in committee.