WEIMER, Justice.
_JjWe granted a writ of certiorari in this case to determine whether the district court erred in granting a motion to quash an indictment charging a parish councilman with two counts of malfeasance in office, violations of LSA-R.S. 14:134. The malfeasance is based on alleged violations of duties imposed upon public officials by two provisions of the Code of Governmental Ethics. Finding the district court erred in ruling that the two-count indictment fails to charge a valid offense, we reverse the ruling of the district court, and of the court of appeal which affirmed that ruling, and remand this case to the district court for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
On December 7, 2007, the grand jury of Tangipahoa Parish returned an indictment charging defendant Michael Petitto with two counts of malfeasance in office, violations of LSA-R.S. 14:134. According to the State’s answer to the bill of particulars, the charges stem from a series of events that commenced on or about March 1, 2006, and continued through November 30, 2006. Defendant, an elected | ¿member of the Tangipahoa Parish Council, is alleged to have initiated and voted to approve .a parish council resolution supporting an application for tax benefits by the Pine Grove Subdivision, ostensibly for development of property the defendant’s brother had already planned to purchase and sell for a profit. Allegedly, in return, the mortgage loan securing defendant’s personal residence in Tangipahoa Parish was paid off by the defendant’s brother and the mortgage was cancelled.
Defendant entered a plea of not guilty to the malfeasance charges. He later filed a motion to quash the indictment urging as grounds that the indictment is duplicitous and fails to charge an offense that is punishable under a valid, statute. LSA-C.Cr.P. art. 532(1) and (3). As to the latter contention, the defendant argued that the indictment failed to adequately state or identify a criminal offense as the vehicle through which he intentionally performed one of his duties as a councilman in an unlawful manner. Specifically, the defendant argued that the indictment relied *1248 on violations of LSA-R.S. 42:1112(B)(1) and 42:1111(E)(1) to support the malfeasance charges, provisions codified in Title 42 of the Revised Statutes as part of the Code of Governmental Ethics. According to defendant, because the provisions of the Code of Governmental Ethics are not criminal but civil in nature, and punishable by a fine levied by the Louisiana Ethics Board, the State cannot rely on the alleged civil violations to support a criminal prosecution for malfeasance in office; rather, a prosecution for malfeasance in office must be based on a separate and distinct criminal violation such as theft, bribery, kickbacks, extortion, or solicitation to commit a crime.
In response, the State argued that LSA-R.S. 14:134 does not require a violation of a separate and distinct criminal statute. To the contrary, to establish malfeasance in office, the State contended it need only prove the existence of an affirmative duty | .¡imposed by law or statute upon the defendant as a public officer and that the defendant intentionally performed that duty in an unlawful manner or intentionally refused or failed to perform a duty imposed upon him by law.
Following a hearing on the motion to quash, the district court ruled in favor of the defendant. In granting the motion to quash, the court explained: “[W]hen it comes to laws that establish ethical standards on public officials I do not believe that those types of laws should be the basis or can be the basis of prosecution for malfeasance in office.” Noting that laws addressed to affirmative duties other than ethical ones can, in fact, form the basis of a prosecution for malfeasance in office, the court cautioned that its ruling was intended to apply strictly to the Code of Governmental Ethics.[1]
The State appealed the adverse ruling, and the court of appeal affirmed, reasoning that the Code of Governmental Ethics is not criminal in nature and that the malfeasance statute was not designed to punish the forms of misconduct alleged therein. State v. Petitto, 09-1855, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 1100, 1103. This court granted a writ of certiorari to address the State’s contention that the lower courts erred in concluding that violations of the duties imposed on public officials by the Code of Governmental Ethics may not serve as the basis for a charge of malfeasance in office. State v. Petitto, 10-0581 (La.11/5/10), 50 So.3d 822.
LAW AND ANALYSIS
The motion to quash is a procedure by which to raise pre-trial defenses that do not go to the merits of a charge. Under the grounds urged in this case, that the indictment fails to charge an offense which is punishable under a valid statute, the motion to quash can be analogized to an exception of no cause of action in the civil arena. State v. Perez, 464 So.2d 737, 739 (La.1985). In considering the motion to quash, the district court accepts as true the facts contained in the indictment or bill of information and in the bill of particulars, and determines as a matter of law and from the face of the pleadings, whether a crime has been charged. Id.; State v. Gerstenberger, 260 La. 145, 150, 255 So.2d 720, 722 (1971).
In this case, the indictment handed down by the Tangipahoa Parish grand jury charges defendant with two counts of mal *1249 feasance in- office, violations of LSA-R.S. 14:134. That statute provides, in relevant part:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
One key phrase in the statute is “any duty lawfully required of him.” This phrase makes it clear that before a public officer or employee can be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty upon him. State v. Perez, 464 So.2d at 741, citing State v. Passman, 391 So.2d 1140, 1144 (La.1980). As this court has explained, this duty must be expressly imposed by law upon the officer (or employee) because the officer (or employee) is entitled to know exactly what conduct is expected of him in his iofficial capacity and what conduct will expose him to criminal charges. State v. Perez, 464 So.2d at 741.
In this case, the indictment explicitly sets forth the affirmative duties it alleges are “lawfully required” of the defendant. Count 1 of the indictment charges defendant with malfeasance in office “by wilfully and intentionally performing duties in an unlawful manner by violating LA R.S. 42:1112 B(l).” Count 2 charges defendant with “wilfully and intentionally performing duties in an unlawful manner by violating LA R.S. 42:1111 E(l).” These statutes appear in Title 42, Chapter 15 of the Revised Statutes under the title, Code of Governmental Ethics.
Louisiana R.S. 42:1112(B)(1) provides, in relevant part:
No public servant ... shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
(1) Any member of his immediate family.
Louisiana R.S. 42:1111(E)(1) provides, in relevant part:
No public servant ... shall receive or agree to receive any thing of economic value for assisting a person in a transaction, or in an appearance in connection with a transaction, with the agency of such public servant.
In his motion to quash, the defendant argued, and the lower courts concluded, that violations of the aforementioned statutes may not serve as a basis for a criminal charge of malfeasance in office under LSA-R.S. 14:134. This conclusion was based on the rationale, explained by the court of appeal, that the Code of Governmental Ethics is not a criminal statute the aim of which is the apprehension and punishment of persons guilty of public wrongdoing, but rather an enactment aimed at preventing public officers and employees from becoming involved in conflicts of interest, which may or may not result in wrongdoing. Since “the Ethics Code is not criminal in |finature,” the court of appeal reasoned “that the malfeasance statute was not designed to punish the forms of misconduct alleged therein.” State v. Petitto, 09-1855 at pp. 5-6, 35 So.3d at pp. 1102-1103.
Before this court, the State argued that the focus of the lower courts was misplaced. According to the State, the issue *1250 presented is not whether the provisions of the Code of Governmental Ethics are criminal in nature, because the offense being punished under LSA-R.S. 14:134 is not the violation of an ethical duty in and of itself. Rather, the real issue presented is whether the provisions of the Code of Governmental Ethics impose affirmative duties upon public officers and employees, the violation of which (or performance “in an unlawful manner”) may form the predicate for a charge of malfeasance in office when committed with the requisite criminally culpable state of mind.[2] The State’s argument in this regard is well-founded. The issue presented in this case is a narrow one: whether a duty imposed on a public official by the cited provisions of the Code of Governmental Ethics is a “duty lawfully required of him” within the meaning of LSA-R.S. 14:184.
To answer this question of legislative intent, we look first to the language of the statute. State v. Johnson, 03-2993, p. 11 (La.10/19/04), 884 So.2d 568, 575; State v. Gutweiler, 06-2596, p. 9 (La.4/8/08), 979 So.2d 469, 476. “What ‘a legislature says in the text of a statute is considered the best evidence of the legislative intent or will.’” State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800, quoting, Norman J. Singer, Statutory Construction § 46:03, p. 135 (6th ed.2000). For that reason, “where the words of a statute are clear and free |7from ambiguity, they are not to be ignored under the pretext of pursuing their spirit.” State v. Freeman, 411 So.2d 1068, 1073 (La.1982); See also LSA-R.S. 1:4. Although criminal statutes are subject to strict construction under the rule of lenity, the rule is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which is to ascertain and enforce the true meaning and intent of the statute. State v. Shaw, 06-2467, p. 14 (La.11/27/07), 969 So.2d 1233, 1242.
The crime of malfeasance in office, which has been a part of Louisiana’s penal laws for close to a century,[3] is intended to protect the public by deterring public officers and employees from abusing their positions of public trust. State v. McGuffie, 42,069, p. 11-12 (La.App. 2 Cir. 8/1/07), 962 So.2d 1111, 1118, writ denied, 07-2033 (La.2/22/08), 976 So.2d 1283. The language of the malfeasance statute is comprehensive. The law applies to “any public officer or public employee” who intentionally refuses or fails to perform or who intentionally performs in an unlawful manner “any duty lawfully required of him.” In enacting this provision, the legislature deliberately chose not to specify or name a particular duty or duties, the abuse of which could lead to prosecution for malfeasance. This decision not to further define the duty element is understandable given the multitude of different public employees and officials covered by the statute. Indeed, it would be difficult, if not impossible, to construct a definition of duty that would encompass all the derelictions of duty the statute seeks to proscribe. Instead, the legislature chose to restrict the duty element of the crime to “any duty lawfully required” of the public officer or employee.
This is not the first case in which courts have been tasked with interpreting *1251 the meaning and scope of the phrase “any duty lawfully required.” In rejecting a vagueness challenge to LSA-R.S. 14:134, the court in State v. Perret, 563 So.2d 459 (La.App. 1 Cir.1990), noted that the language has a well-defined and readily understandable meaning:
Webster’s Third New International Dictionary (1968) defines “lawful,” “lawfully,” and “unlawful” as follows: (1) “Lawful” means “constituted, authorized, or established by law: rightful.” (2) “Lawfully” means “in a lawful manner.” (3) “Unlawful” means “not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by law.”
Perret, 563 So.2d at 467. In State v. Passman, supra, this court interpreted the phrase “any duty lawfully required” to mean that before a public officer or employee can be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty upon him. Passman, 391 So.2d at 1144. As Justice Lemmon later explained, the court in Passman examined the statutory language and, consistent with that language, narrowly defined malfeasance in office as the intentional failure to perform a specific duty expressly defined by the legislature:
In Passman, this court was unwilling to say that any willful dereliction of duty constituted an intentional refusal or failure to perform a duty lawfully required of the public officer by the malfeasance statute. The court held that the defendant’s misconduct did not constitute the crime of malfeasance if no statute delineated the affirmative duty that defendant was charged with failing to perform. By adopting this narrow “express legislative requirement” approach, the court obviously rejected the idea that the Legislature intended to adopt an open-ended offense covering general derelictions of duty. The court also sought to avoid any constitutional problems of vagueness.
State v. Perez, 464 So.2d at 746 (Lemmon, Justice, dissenting) (footnote omitted). Consistent with this limiting definition, that the duty be one expressly defined by the legislature, the court in State v. Perez, supra, found a “duty lawfully required,” in the 19duty not to interfere with the execution of the constitution and laws of this state, imposed upon public officials (and upon the defendant district attorney) by virtue of the oath of office set forth in La. Const. art. X, § 30. Perez, 464 So.2d at 742. Similarly, in State v. Schwehm, 98-1599 (La.3/19/99), 729 So.2d 548, the court upheld the malfeasance conviction of a former Justice of the Peace on evidence that he failed to remit littering fines that by statute, LSA-R.S. 25:1112(A),[4] he was required to remit to the governing authority of the parish. The court found that by failing to remit the fines and converting them to use for his own benefit and the benefit of his public office, the defendant had “intentionally refused to perform the duty placed upon him by law” to remit the fines to the parish governing authority. Schwehm, 98-1599 at 7, 729 So.2d at 551.
As demonstrated by the foregoing, in determining the meaning of the phrase “duty lawfully required” in the malfeasance statute, the focus of the courts has been on whether there is a statute or provision of law which imposes an affirmative, personal duty on the public officer or employee in his role as such which he has intentionally failed to perform or intentionally violated, ie., performed in an unlawful *1252 manner.[5] Louisiana R.S. 42:1112(B)(1) and 42:1111(E)(1) are just such statutes. These provisions are imposed upon each public servant[6] in his or her role as a public officer or employee.[7] The particular statutes at issue here direct that no public servant shall participate in a transaction involving a governmental entity in which to his actual knowledge, a member of his immediate family has a substantial economic interest, LSA-R.S. 42:1112(B)(1), and that no public servant shall receive any thing of economic value for assisting a person in a transaction with the agency of the public, servant. LSA-R.S. 42:1111(E)(1). The standards of conduct imposed by these statutes are clear and unambiguous. As a public servant, each individual has an affirmative, personal duty to conform his or her conduct to the mandated standard expressed in these statutes. The statutes are enactments of the legislature, and as such, have the force and effect of substantive law.[8] They constitute, in a word, “duties lawfully required” of a public servant.
Despite the clear and comprehensive sweep of the statutory language, the lower courts declined to hold that these prohibitions in the Code of Governmental Ethics are “duties lawfully required” of a public servant. The basis for this holding apparently stems from jurisprudence of this court recognizing that the Code of Governmental Ethics is not a criminal statute designed to ferret out and punish persons guilty of public wrongdoing, but rather is legislation imposing ethical standards of conduct which do not necessarily require actual wrongdoing, i.e., criminal conduct, on the part of a public servant. See Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 755-756 (La.1983). While accurate, the lower courts’ reliance on this characterization of the Code misses the point. Violations of the provisions of the Code of Governmental Ethics at issue do not alone subject public servants to criminal sanctions or to prosecution for malfeasance in | n office. These provisions merely establish the “duties lawfully required” of a public servant. It is the violation of an affirmative duty, coupled with the requisite wrongful, criminally culpable intent which gives rise to the crime of malfeasance. Therefore, the lower courts’ focus on the fact that the provisions of the Ethics Code do not require actual corruption on the part of the public servant or a loss to the State is misplaced. There is nothing in the language of LSA-R.S. 14:134, or in the jurisprudence interpreting the same, to suggest that the “duty lawfully required” of a public official be “criminal in nature;” civil statutes may serve as the source of the duty, the knowing and intentional violation of which may constitute the offense defined by LSA-R.S. 14:134. See, e.g., State v. Schwehm, supra *1253 (violation of duty imposed by former LSA-R.S. 25:1112(A)); State v. Perez, supra (violation of duty imposed by oath of office in La. Const. art. X, § 30); State v. Boyte, 42,768 (La.App. 2 Cir. 12/19/07), 973 So.2d 900 (violation of duty imposed by LSA-R.S. 42:1461); State v. Perret, supra (violation of duty imposed by oath of office and by LSA-R.S. 36:602(B), 36:608(D), 36:609(C), 56:3(B), 56:313 and 56:434(F)).
In an effort to assure that elected officials and public employees are independent and impartial, that governmental decisions and policy are made in the proper channel of the governmental structure, that public office and employment are not used for private gain other than the remuneration provided by law, and that there is public confidence in the integrity of government, the Code of Governmental Ethics proscribes certain conflicts of interest. LSA-R.S. 42:1101(B). The duty imposed by the Code of Governmental Ethics is a duty not to become embroiled in a prohibited conflict of interest.
At its core, the holding of the lower courts is premised on the belief that the provisions of the Code of Governmental Ethics are mere directives to public officials | iato avoid conflicts of interest, providing broadly stated, aspirational guidelines rather than affirmative duties. This holding ignores both the mandatory language of the provisions and the constitutional and legislative source of the provisions. Louisiana R.S. 42:1112(B)(1) and 42:1111(E)(1) are couched in the imperative, not the subjunctive. These provisions are more than aspirational principles. The statutes use the mandatory “shall.” Enacted pursuant to the directive of La. Const, art. X, § 21, these statutes provide an objective standard of how public servants must conduct themselves, and they give clear notice of exactly what conduct is prohibited: These statutes establish specific duties, not just broad principles. As such, the provisions of the Code of Governmental Ethics at issue are not substantively different from other civil statutes that have been held to constitute “duties lawfully required” of a public servant or employee, the intentional and willful violation of which will support a prosecution for malfeasance in office.
Nor does the fact that the Code of Governmental Ethics empowers the Board of Ethics to determine and sanction prohibited conflicts of interest .compel a different conclusion. Ethical impropriety may co-exist with criminal conduct, and the existence of the former- does not pre-empt the imposition of criminal sanctions for violation of a distinct penal statute. See LSA-R.S. 42:1156[9] and 42:1164.[10]
|iSThe concern voiced by the defendant in brief, that a holding that violations of the affirmative duties imposed upon public officials by these provisions of the Code of Governmental Ethics, when committed with the- requisite criminally culpable intent may serve as a basis for a charge of malfeasance in office, would open the floodgates for criminal prosecutions of *1254 public officials and effectively convert the ethics code' into a criminal code is simply unfounded. Louisiana R.S. 14:134 does not criminalize all ethical violations and/or general derelictions of duty. The object of the malfeasance statute is to punish a breach of duty committed with the required culpable state of mind. To this end, the statute expressly limits its application to instances in which a public officer or employee intentionally refuses or fails to perform or intentionally performs in an unlawful manner, any affirmative duty imposed by law upon him in his role as a public servant. The inclusion in the statute of a criminally culpable state of mind makes it clear that it applies only where the statutorily required mens rea is proven beyond a reasonable doubt. Thus, mere inadvertence or negligence, or even criminal negligence, will not support a violation of the malfeasance statute because the statute specifies the act or failure to act must be intentional.
CONCLUSION
After examining the language of LSA-R.S. 14:184 and that of LSA-R.S. 42:1112(B)(1) and 42:1111(E)(1), the provisions upon which the two-count indictment against defendant are based, we find, contrary to the rulings of the courts below, that violations of the duties imposed on public officials by LSA-R.S. 42:1112(B)(1) and 42:1111(E)(1), when committed with the requisite criminal intent, may form the basis for a charge of malfeasance in office. Based on this finding, we hold that the district court erred in quashing the two-count indictment against |udefendant on grounds it fails to charge an offense which is punishable under a valid statute. The rulings of the lower courts are reversed, and this case is remanded to the district court for further proceeding consistent with this opinion.
REVERSED AND REMANDED.

. Because the district court granted the motion to quash on grounds that the indictment fails to charge an offense which is punishable under a valid statute, it did not address defendant’s additional argument for quashing the indictment, i.e., that the indictment is duplicitous because the State is prosecuting defendant for the same alleged conduct in both counts of the indictment.

. The State contends there is nothing in the language of LSA-R.S. 14:134 that requires a public official's violation of the “duties lawfully required” to constitute a distinct crime. If such were the case, the State posits, a public official could simply be charged with the underlying crime, and the malfeasance statute would be superfluous.

. See 1912 La. Acts, No. 254 § 1.

. Redesignated as LSA-R.S. 30:2532 by 1995 La. Acts 1019.

. When a public servant performs a duty imposed upon him by law in a manner contrary to the dictates of that law, he performs it in an unlawful manner.

. A public servant is defined to mean a public employee or an elected official. LSA-R.S. 42:1102(19). An exception exists forjudges, whose conduct is governed exclusively by the provisions of the Code of Judicial Conduct. LSA-R.S. 42:1167.

. In fact, the secretary of state is required by law to furnish a copy of the ethics code to every public servant receiving a commission, and the public servant must acknowledge receipt thereof when filing his or her oath of office. LSA-R.S. 42:1162.

.Because the provisions are legislative enactments, the court is not presented with the issue, raised but not resolved, in State v. Passman, supra, of whether a duty imposed under a rule not directly imposed by the legislature, such as an administrative rule, is sufficient to supply the duty element of the crime of malfeasance in office.

. LSA-R.S. 42:1156 provides:
Upon finding at a public hearing that there is probable cause to believe that any public servant or other person has violated any criminal law of this state, the board or panel shall forward a copy of its findings to the district attorney of the parish in which the violation occurred, for appropriate action. Thereafter, notwithstanding any other provision of this Chapter, such district attorney shall have access to all records of the board relative to such charges.

. LSA-R.S. 42:1164 states:
Nothing in this Chapter is intended to nor is to be construed as repealing, amending, or modifying in any way any provision of any criminal law of this state.