Judge Daniel L. Dysart
Following a judge trial, Van C. Ballard, a retired New Orleans Police Department ("NOPD") officer (hereafter, "Ballard"), was convicted of one count of malfeasance in office, and he now appeals his conviction. For the reasons that follow, we affirm.
PROCEDURAL BACKGROUND:
On February 8, 2017, the State of Louisiana filed a bill of information charging Ballard with malfeasance in office, a violation of La. R.S. 14:134.
At the time of the alleged offense, Ballard was working as a civilian employee of NOPD. He was also serving as a commissioned reserve officer with the Orleans Parish Sheriff's Office (OPSO), and in that capacity, was working a private detail in the uptown area of New Orleans.
After entering a plea of not guilty to the offense, Ballard elected a trial by judge, which was held on May 30, 2017. The court took the case under advisement, and on the following day, found Ballard guilty as charged. Ballard waived all delays and was sentenced to two years imprisonment at hard labor, suspended, and two years of inactive probation. Ballard was also assessed fines, costs and fees totaling $987.
FACTUAL BACKGROUND:
At trial, NOPD Sgt. Terrance Wilson testified that he participated in the arrest *402 of Maurice Johnson, the victim, on November 3, 2016, who, along with another assailant, was suspected of burglarizing vehicles and residential trespassing. In pursuit of the suspects, the officers responding to the incident located the victim hiding under a house in the area and were attempting to take him into custody. While the officers were apprehending the victim, Ballard, who was not assigned to the arresting officers' unit, "showed up out of nowhere." Sgt. Wilson testified that neither he nor his colleagues had requested Ballard's assistance.
Sgt. Wilson testified that he and Off. Jorgenson coaxed the victim out from under the house and restrained him face-down on the ground in a small alleyway while they placed him in handcuffs. In the process of making the arrest, Sgt. Wilson witnessed Ballard run up the alley toward them and heard the "thud" of Ballard striking the victim in the mouth with his foot. Sgt. Wilson told Ballard that NOPD Officers did not behave that way anymore and asked him to back away from the scene. Sgt. Wilson testified that the victim had not made any threatening motions toward Ballard or anyone else. Sgt. Wilson stated that the victim immediately complained that Ballard had kicked him in the mouth and asked if the officers were going to do anything about it. Sgt. Wilson replied that he would "handle it."
Sgt. Wilson and Off. Jorgenson proceeded to arrest the victim as Ballard continued in the direction of the second suspect and assisted in his apprehension from the roof of a nearby building. Sgt. Wilson characterized the physical contact between Ballard and the victim as "a battery" and reported it as such to Lt. Kendrick Allen.[1] Sgt. Wilson testified that he and Off. Jorgenson had the victim in custody by the time Ballard made contact with him, and stated that "once a person stops resisting, any kind of action stops, and we just don't receive that kind of training to kick people in the face."
On cross-examination, defense counsel asked Sgt. Wilson if the "kick" was accidental or intentional and Wilson responded that he did not "know why [Ballard] did it," although he admitted he did not ask. Notwithstanding Sgt. Wilson's admission that both he and Off. Jorgenson were yelling at the victim to show them his hands, Sgt. Wilson confirmed that the victim had already complied with their commands by the time Ballard approached and Off. Jorgenson was in the process of securing the handcuffs behind the victim's back. Sgt. Wilson described the alleyway in which the victim was apprehended as "really dark" and a "tight squeeze."[2] Overall, there were four fleeing suspects who were alleged to have been burglarizing vehicles, climbing over people's fences, and onto their roofs in an uptown neighborhood at 1:00 a.m.; under these circumstances, Sgt. Wilson "absolutely" believed the suspects "were dangerous" and that it was possible for someone in Ballard's position to believe they were "capable of resisting arrest."
Counsel for Ballard played the body camera video again in open court and Sgt. Wilson explained that the clicking noise heard in the video indicated the handcuffs were being secured and the thud of Ballard kicking the victim occurred afterward. Following Ballard's contact with the victim, Sgt. Wilson looked up, saw Ballard, and told him that was not how they operated, which was audible in the body camera video. In Sgt. Wilson's haste to secure the *403 fleeing suspects, he did not have time to "extract [Ballard] from the scene." Following the arrests, Sgt. Wilson could not recall whether the victim had sustained any visible injuries, but he believed EMS had been called to the scene. Sgt. Wilson also contacted the OPSO and reported Ballard's contact with the victim. At some point later in the day, Sgt. Wilson gave an official statement to NOPD Sgt. Barnes in which he characterized Ballard's actions as "a field goal style kick" and that he had no doubt "it was one hundred percent intentional and unjustified."
As reflected on the body camera video, Sgt. Wilson also made a statement to OPSO Lt. Morrell at the scene shortly after the incident, in which he stated that it was conceivable that something other than an intentional kick had occurred.[3] On redirect examination, the State again played portions of the body camera video in court and Sgt. Wilson agreed that he told his direct supervisor that Ballard kicked the victim "dead in the mouth" and that it was unwarranted in that situation. Sgt. Wilson explained that he was more comfortable speaking to his supervisor than the investigator from the OPSO whom he had never met before, so he was reluctant to give his full impression to the OPSO investigator. However, Sgt. Wilson testified that at no point did he believe that Ballard's boot struck the victim's face by accident or coincidence. Sgt. Wilson did not recall Ballard making any statements to him during or after the incident indicating that the contact was accidental and repeated that he did not ask for, nor believe he required Ballard's assistance in apprehending the victim.
NOPD Public Integrity Bureau Sgt. David Barnes testified that he investigated the alleged battery of the victim eight hours after it occurred, interviewed the officers who had been at the scene, and reviewed the body camera footage. At the time, the scope of his employment included investigating use of force and serious use of force complaints, implicating possible criminal liability. Although Sgt. Barnes did not interview Ballard, his investigation led to Ballard's arrest for simple battery.[4] At the time of the incident, Ballard had been wearing an OPSO uniform and Sgt. Barnes learned Ballard was a commissioned reservist with the OPSO, was employed as a civilian and held a retired commission with the NOPD.
On cross-examination, Sgt. Barnes explained that as a civilian employee of the NOPD, Ballard did not possess the authority of a sworn officer, although he could not speculate about the authority Ballard may have had with the OPSO. By the time Sgt. Barnes joined the investigation, Sgt. Wilson had already issued Ballard a summons for municipal battery. He also testified that, at one point, the body camera footage he reviewed showed the victim resisting arrest, and admitted that he could not hear the "thud" of Ballard allegedly kicking the victim in the face.[5]
*404 Following Sgt. Barnes' testimony, the State offered, and Ballard accepted, a stipulation that Ballard was "a reserve commissioned law enforcement officer with the Orleans Parish Sheriff's Office" at the time of the offense.[6]
Ballard testified in his defense. He indicated that he received a call from a resident of the neighborhood he was patrolling reporting that four suspicious-looking individuals were pulling the door handles on cars in the neighborhood. As he arrived on the scene, he encountered numerous NOPD officers searching the area. Ballard stated that he heard yelling coming from an alleyway in the 900 block of Joseph Street, and believed that police officers needed his assistance. As he ran down the dark alley towards two of the officers, who had a suspect on the ground, his knee gave out causing him to pitch forward and inadvertently kick the suspect in the mouth.
Ballard testified that Sgt. Wilson, who was in the process of handcuffing the suspect, looked up and told him "we don't do that anymore." According to Ballard, rather than stop to explain that the kick was accidental, he proceeded to the backyard of the house and apprehended another suspect who was hiding on the roof of a shed.
DISCUSSION:
Although Ballard assigns seven errors for review, six of those errors collectively amount to one assignment of error; specifically, that there was insufficient evidence to convict him of malfeasance in office.[7]
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Applying the Jackson standard, a reviewing court must not second guess the rational credibility determinations of the trier of fact. State v. Williams, 11-0414, p. 18 (La.App. 4 Cir. 2/29/12), 85 So.3d 759, 771.
Louisiana Revised Statute 15:438, provides that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, to convict, it must exclude every reasonable hypothesis of innocence." Further, the Louisiana Supreme Court held in State v. Davis :
In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have *405 found proof of guilty beyond a reasonable doubt under Jackson v. Virginia.
92-1623 (La. 5/23/94), 637 So.2d 1012, 1020 (emphasis in original; internal citations omitted).
Malfeasance in office is committed when any public officer or public employee (1) intentionally refuses or fails to perform any duty lawfully required of him; or (2) intentionally performs any such duty in an unlawful manner; or (3) knowingly permits any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner. La. R.S. 14:134 A.
"[B]efore a public officer or employee can be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty upon him." State v. Petitto, 10-0581, p. 4 (La. 3/15/11), 59 So.3d 1245, 1249. The duty must be "expressly imposed by law upon the officer (or employee) because the officer (or employee) is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will expose him to criminal charges." Id., 10-0581, pp. 4-5, 59 So.3d at 1249. Ballard stipulated at trial that as a commissioned reserve deputy of the OPSO, he was authorized to make arrests. He testified that at the time of the incident, he was wearing a full OPSO uniform. Additionally, Ballard testified that he was a NOPD officer for over twenty years prior to joining the OPSO, and was aware of the rule relative to reasonable and necessary force.
Reasonable force is allowed to make an arrest and detention, and to overcome any resistance or threatened resistance of the person being arrested or detained. Kyle v. City of New Orleans, 353 So.2d 969, 972 (La.1977) ; Estate of Francis v. City of Rayne , 07-359, p.6 (La.App. 3 Cir. 10/3/07), 966 So.2d 1105, 1110. The totality of the circumstances must be considered when determining if the force used is reasonable. Therefore, the trial court must evaluate the officer's actions comparing them to those of an ordinary, prudent and reasonable man placed in the same position as the officer and with the same knowledge as the officer. Kyle , 353 So.2d at 973.
The State argued at trial that Ballard's actions in kicking the suspect in the face as he lie on the ground being handcuffed by two other officers was not necessary under the circumstances. The arresting officers had the suspect under control.
Sgt. Wilson testified that he felt Ballard's actions were excessive and unreasonable, as the suspect was already motionless and handcuffed on the ground as Ballard approached. Ballard testified that as he ran into the alleyway, he was prepared to use force, but acknowledged that as he drew near the suspect, he reevaluated the situation and decided that use of force was unnecessary. He testified that the kick was inadvertent.
Based on his assertions that the kick was not intentional, Ballard argues that the State failed to prove he intentionally used excessive force. Citing Petitto , he contends that "mere inadvertence or negligence, or even criminal negligence, will not support a violation of the malfeasance statute because the statute specifies the act or failure to act must be intentional." Petitto , 10-0581, p. 13, 59 So.3d at 1254. However,
[c]onflicting statements as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244 (La.App. 4 Cir. 1989). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony *406 of any witness. Id. A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La. 1984).
State v. Wells , 10-1338, p. 5 (La.App. 4 Cir.. 3/30/11), 64 So.3d 303, 306.
Contrary to Ballard's testimony, during the course of investigation, Sgt. Wilson testified that Ballard's kick was "a field goal style kick" which was "100 percent intentional and unjustified." In evaluating the evidence, the trial court indicated on multiple occasions that it did not believe Ballard accidently slipped when his knee gave out. It noted that immediately after the incident, Ballard was able to run into the backyard and climb a ladder to apprehend another suspect.
Considering the observations by the trial court, coupled with Sgt. Wilson's testimony that the kick was a "field goal-style kick," which he believed to be intentional, we cannot say the trial court erred in its conclusions.[8]
We find that there was sufficient evidence for the trial court to find Ballard guilty as charged of malfeasance in office.
In addition to the sufficiency of the evidence arguments, Ballard asserts that his Sixth Amendment right to confront his accuser was violated as the suspect did not testify at trial. In this case, the suspect was not Ballard's accuser. Rather, Sgt. Wilson was the person who reported Ballard's actions to his superiors. This assignment of error has no merit.
Accordingly, we find there was sufficient evidence to convict Ballard of malfeasance in office, and affirm his conviction and sentence.
AFFIRMED

A police body camera video was played in open court and introduced as State's Exhibit 1.

Sgt. Wilson later testified that the alley was about one and a half yards wide.

Sgt. Wilson prefaced this testimony with an explanation to the court in which he explained that it can be "touchy" for police officers to give statements to other police officers about complaints regarding the actions of police officers. He further explained that the statement he made to Lieutenant Morrell at the scene was the way he felt at the time, amidst the chaotic backdrop of the arrests and impending internal investigation.

The crime of simple battery is set forth in La. R.S. 14:35.

The court had heard previous testimony from Sgt. Barnes at the preliminary hearing and requested it not be duplicated at trial. At the preliminary hearing, Sgt. Barnes testified that Ballard had been patrolling the area in his commissioned capacity with the OPSO and was assisting NOPD officers in making an arrest when he ran up the alleyway toward the victim's location. The victim had been pulled out from under the house, was lying face-down on the ground and was in the process of being handcuffed, although he was not fully restrained and was "lightly resisting" at the time Ballard kicked him in the face. During Sgt. Barnes's investigation, Sgt. Wilson had described the "field goal style kick," but also claimed there had been "no reportable use of force used by anybody" during the arrest, although Sgt. Barnes explained that meant there had been no complaints of injury. Based on his investigation, Sgt. Barnes concluded the physical contact between Ballard and the victim "did not appear to be unintentional."

The court accepted this stipulation to avoid holding the trial open for an absent witness.

Initially, Ballard was issued a summons from Municipal Court for simple battery. However, the Orleans Parish District Attorney filed a bill of information charging Ballard with malfeasance in office.

In Off. Ballard's sixth assignment of error, he argues an affirmative defense of justification. See La. R.S. 14:18. However, at trial, Ballard's defense was that the contact with the suspect was accidental, not that it was justified. Ballard could have asserted such a defense at trial, but did not. This Court is restricted to reviewing those theories actually put forth at trial, not for the first time on appeal. State v. Castro, 16-0284, p. 8 (La.App. 4 Cir. 12/14/16), 206 So.3d 1059, 1064.