Judgment rendered December 6, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,213-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Respondent

versus

RYAN CHAPMAN                          Applicant

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 383,881

Honorable Christopher T. Victory, Judge

* * * * *

RONALD J. MICIOTTO, L.L.C.            Counsel for Applicant
By: Justin P. Smith

JAMES E. STEWART, SR.                 Counsel for Respondent
By: William J. Edwards

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

HUNTER, J., dissents with written reasons.

**STEPHENS, J.**

Defendant, Ryan Chapman, a Caddo Parish Sheriff's Office ("CPSO") deputy, was charged by bill of indictment with malfeasance in office, a violation of La. R.S. 14:134. Deputy Chapman filed a motion to quash the indictment, which was denied by the trial court. Dep. Chapman sought supervisory review of the ruling with this Court, and by Order dated April 26, 2023, the writ was granted to docket for resolution. For the reasons set forth below, we reverse the trial court's ruling denying the motion to quash the bill of indictment and remand for further proceedings consistent with this opinion.

## FACTS

On March 18, 2021, CPSO deputies got a tip concerning the whereabouts of Chad Deloach, a wanted felon with an active arrest warrant. Deloach was reported to be located at 14554 Pecan Road in Keithville, Louisiana. Dep. Chapman, along with two other deputies, went to 14554 Pecan Road to search for Deloach. Upon their arrival, the deputies observed two mobile homes on the property. William Walls exited one of the mobile homes, and Dep. Chapman explained to him that the deputies were looking for Deloach.

According to Dep. Chapman's motion to quash, Walls gave the deputies verbal consent to search his home. Dep. Chapman entered and searched the residence. After exiting Walls' home, Dep. Chapman began walking toward the second mobile home on the property. Dep. Chapman asserted that, at that time, Walls came back out of his home and became verbally hostile and argumentative. According to Dep. Chapman, Walls was holding up his phone and yelling, "I have someone you can talk to,

otherwise you can get the f**k off my property." Walls then walked back into his home with Dep. Chapman following him. Dep. Chapman decided at that time to detain Walls for officer safety while he attempted to search the second mobile home. Dep. Chapman handcuffed Walls and placed him in the back of a patrol unit. Very soon thereafter, Walls suffered an apparent heart attack from which he ultimately passed away.[1]

Following the incident, the CPSO completed an internal investigation and cleared Dep. Chapman of any wrongdoing.[2] The CPSO concluded that he had not violated the department's policies and procedures during the incident. Dep. Chapman has continued to work for the CPSO as a deputy since the completion of the department's investigation into the incident.

Shortly thereafter, the State instituted the instant prosecution against Dep. Chapman, alleging that he had committed malfeasance in office by intentionally performing his duties in an unlawful manner while being employed as a law enforcement officer. On June 30, 2021, a Caddo Parish grand jury returned a secret indictment charging Dep. Chapman as follows:

> **COUNT 1:  MALFEASANCE IN OFFICE as defined by
> La. R.S. 14:134(A)(1) or (2)**

---

[1] An autopsy revealed that William Walls had an enlarged heart (one approximately 33% larger than a normal heart), and all three of his coronary arteries contained calcified atherosclerotic plaques and were narrowed between 80 and 90%.

[2] As part of the internal investigation, Detective Christopher Daniel with the Criminal Investigation Division interviewed Brian Walls, son of William Walls. Unbeknown to deputies the day of the incident, Brian was living in the second mobile home on William Walls' property. Brian told Det. Daniel that he was home the day of the incident. He saw the deputies arrive and heard them knock on the day of his mobile home. Because Brian thought they had a warrant for his arrest, he did not answer the door. He acknowledged that Deloach, the man the deputies were looking for, had stayed at his mobile home the previous night but had left prior to the deputies' arrival.

Brian Walls stated that he saw the deputies walk his father from the first mobile home in handcuffs, and he saw them place his father in the back of the patrol car. Brian told Det. Daniel that it was no longer than 30 seconds before deputies returned to the car to begin administering CPR to his father.

**COUNT 1:** in that he did intentionally refuse or fail any duty lawfully required of him, as such officer or employer; or did intentionally perform his duties in an unlawful manner while being employed as a law enforcement officer [of] the Caddo Parish Sheriff's Office

Contrary to the Laws of the STATE OF LOUISIANA and against the peace and dignity of the same.

In response, Dep. Chapman filed a motion for a bill of particulars requesting that the State identify the specific affirmative duty that he allegedly refused or failed to perform and/or performed in an unlawful manner; any criminal statutes forming the basis for the malfeasance charge; a list of facts the State believed would result in a conviction of malfeasance; a list of the specific intentional acts which Dep. Chaman undertook which subjected him to the charge; and copies of the expressed written duty he had allegedly violated.

The State responded to the bill of particulars, urging that it was not alleging an affirmative duty that Dep. Chapman had failed to perform pursuant to La. R.S. 14:134(A)(1). Instead, the State indicated that the affirmative duty Dep. Chapman performed in an unlawful manner in violation of La. R.S. 14:134(A)(2) was:

> The failure of Ryan Chapman's sworn duties to support the Constitution and laws of the United States and the Constitution and Laws of Louisiana and to faithfully and impartially discharge and perform all the duties incumbent on him. Specifically, Ryan Chapman made a warrantless entry into the residence of William Walls, 14554 Pecan Road, Keithville, LA.

Regarding the other points of the bill of particulars, the State's response was:

> Specifically, Ryan Chapman made a warrantless entry into the residence of William Walls, 14554 Pecan Road, Keithville, LA. The entry was made in violation of the Fourth Amendment of the United States Constitution and Louisiana Constitution Article 1 Section 5. While William Walls had earlier given

3

consent for Ryan Chapman to enter his residence, William Walls revoked said consent prior to Ryan chapman's second entry into William Walls' residence. This is also a violation of Louisiana Revised Statute 14:63 Criminal Trespass. After said second entry, Ryan Chapman arrested William Walls without probable cause that William Walls had committed an offense which is in violation of the Fourth Amendment of the United States Constitution and Louisiana Constitution Article 1 Section 5. Pursuant to the illegal arrest, Ryan Chapman committed simple battery upon William Walls in violation of La. R.S. 14:35.

The State did not provide a list of facts it would prove in order to obtain a conviction, nor did it provide a list of the specific, intentional acts undertaken by Dep. Chapman which were "outside the scope of a bill of particulars," contending that it was required to provide neither under *State v. Nance*, 315 So. 2d 695 (La. 1975).

Dep. Chapman filed a motion to quash on October 28, 2021, arguing that, under current Louisiana law, prosecutions for malfeasance in office presuppose the existence of a statute or provision of the law which delineates an affirmative duty upon the official, meaning the duty must be expressly imposed by law upon the official who is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will lead to criminal charges.[3] Dep. Chapman further urged that the State failed to specify what expressed affirmative duty he was tasked with and how he violated that affirmative duty. Dep. Chapman noted his anticipation that the State would argue that any crime committed by a police officer while on duty would result in the commission of malfeasance in office. According to Dep. Chapman, this assumption by the State would be

---

[3] In support, Dep. Chapman cites *State v. Harris*, 46,721 (La. App. 2 Cir. 12/9/11), 79 So. 3d 1248, *writ denied*, 12-0100 (La. 5/4/12), 88 So. 3d 461, *writ denied*, 13-0270 (La. 8/30/13), 120 So. 3d 260.

4

incorrect, as it would lead to absurd consequences such as anytime an officer committed a misdemeanor while on duty, and regardless of his lack of intent to commit malfeasance, he could then be charged with and convicted of, a felony.[4]

The State provided the following in opposition to Dep. Chapman's motion to quash:

> The failure of Ryan Chapman's sworn duties to support the Constitution and laws of the United States and the Constitution and Laws of Louisiana and to faithfully and impartially discharge and perform all the duties incumbent on him. Specifically, Ryan Chapman made a warrantless entry into the residence of William Walls, 14554 Pecan Road, Keithville, Louisiana. The entry was made in violation of the Fourth Amendment of the United States Constitution and Louisiana Constitution Article 1 Section 5. While William Walls had earlier given consent for Ryan Chapman to enter his residence, William Walls revoked said consent prior to Ryan Chapman's second entry into Williams Walls' residence. This is also a violation of Louisiana Revised Statute 14:63 Criminal Trespass. After said second entry, Ryan Chapman arrested William Walls without probable cause that William Walls had committed an offense which is in violation of the Fourth Amendment of the United States Constitution and Louisiana Constitution Article 1 Section 5. Pursuant to the illegal arrest Ryan Chapman committed simple battery upon William Walls in violation of La. R.S. 14:35.
>
> The State of Louisiana alleges that these are duties lawfully required of Ryan Chapman at the time of the offense through the defendant's violation of his sworn duty to support the Constitution and laws of the United States and the Constitution and Laws of Louisiana and to faithfully and impartially discharge and perform all the duties incumbent on him.

On February 22, 2023, the trial court denied Dep. Chapman's motion to quash, stating:

---

[4] In support, Dep. Chapman cites *State v. Hessler*, 570 So. 2d 95 (La. App. 4 Cir. 1990), wherein the appellate court upheld the trial court's decision to quash a bill of information charging a police officer with malfeasance in office. In *Hessler*, the State argued that the police officer unlawfully violated his duty to "ensure the health and welfare of arrested subjects" when a battery was committed on an arrestee. The court in *Hessler* found that no expressed duty existed, and the sworn oath of a police officer to ensure the health and welfare of arrestees was vague and not expressed, as required.

> The standard that this Court must follow and apply to any Motion to Quash is recited in *State v. Perez* [464 So. 2d 737 (La. 1985)] and *State v. Thomas*. It's a 1985 Supreme Court case and a 1996 Second Circuit case, along with many other cases. "In considering a Motion to Quash, the Court must accept as true the facts contained in the Bill of Information and in the Bill of Particulars and determine, as a matter of law, and from the face of the pleadings, whether a crime has been charged. While evidence may be adduced such may not include a defense on the merits."
>
> I determine, as a matter of law and from the face of the pleadings, that a crime has been charged; therefore, I am denying the Motion to Quash.
>
> This writ application was filed shortly after this ruling.

## DISCUSSION

Deputy Chapman asserts that the trial court erred in denying the motion to quash inasmuch as the facts set forth in the bill of particulars, including by reference the entire discovery filed in the court proceedings and the indictment, are insufficient to constitute a crime. According to Dep. Chapman, the motion to quash should have been granted because the indictment fails to charge an offense punishable under a valid statute as required by Louisiana law.

The State, on the other hand, argues that Dep. Chapman had a duty to uphold federal and state laws, and when he reentered William Walls' house, handcuffed him, and placed him in the back of the patrol car, Dep. Chapman intentionally failed to perform the previously stated, expressly written, affirmative duty imposed upon him as a law enforcement officer. The State contends that Dep. Chapman's argument is that the evidence will show that William Walls did not revoke his consent to enter his residence, and this would not be appropriately considered under a motion to quash as doing so would be determining the merits of the case. According to the State, the sole

issue for the trial court and this Court is whether the allegations contained in the bill of information and within the bill of particulars, if taken as true, constitute a malfeasance in office. The State urges that, when taken as a whole, the bill of information and the bill of particulars support a charge of malfeasance in office.

The motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, i.e., matters which do not go to the merits of the charge. La. C. Cr. P. arts. 531-534; *State v. Armstard*, 43,333 (La. App. 2 Cir. 8/13/08), 991 So. 2d 116, *writ denied*, 08-2440 (La. 1/16/09), 998 So. 2d 89, *cert. denied*, 557 U.S. 905, 129 S. Ct. 279, 174 L. Ed. 2d 292 (2009). In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. *Id.* In cases in which the State cannot establish an essential element of the offense under any set of facts conceivably provable at trial, the motion to quash is the proper procedural vehicle. *Id.*

An appellate court may reverse a trial court's judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. *State v. Love*, 00-3347 (La. 5/23/03), 847 So. 2d 1198; *State v. Armstard*, *supra*.

La. R.S. 14:134 provides:

(A) Malfeasance in office is committed when any public officer or public employee shall:

7

(1) intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

(2) intentionally perform any such duty in an unlawful manner; or

(3) knowingly permit any other public officer or public employee, **under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.**

**(B)** **Any duty** lawfully required of a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.

(C) (1) Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.

(2) In addition to the penalty provided for in Paragraph (1) of this Subsection, a person convicted of the provisions of this Section may be ordered to pay restitution to the state if the state suffered a loss as a result of the offense. Restitution shall include the payment of legal interest at the rate provided in R.S. 13:4202.

(3) If the individual convicted of the crime of malfeasance in office is a P.O.S.T. certified full-time, part-time, or reserve peace officer, the P.O.S.T. certification of that peace officer shall be immediately revoked pursuant to R.S. 40:2405(J).

In order to prove malfeasance in office, the State must prove the existence of a law or statute imposing an affirmative duty on Dep. Chapman as a public officer and that Dep Chapman intentionally refused or failed to perform that duty or intentionally performed that duty in an unlawful manner. The duty must be one expressly imposed by law on the public officer because the officer is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will expose him to criminal charges. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bill of particulars, and determine as a matter of law and from the face of the

pleadings whether a crime has been charged. *State v. Petitto*, 10-0581 (La. 3/15/11), 59 So. 3d 1245; *State v. Perez*, 464 So. 2d 737 (La. 1985).

Thus, the sole issue for this Court is whether the allegations contained within the indictment and the bill of particulars, taken as true, constitute malfeasance in office. The Indictment charged Dep. Chapman with malfeasance in office as defined by La. R.S. 14:134(A)(1) or (A)(2)—either he had intentionally refused or failed to perform any duty lawfully required of him as such officer or employee (La. R.S. 14:134(A)(1) or he had intentionally performed any such duty in an unlawful manner while being employed as a law enforcement officer (La. R.S. 14:134(A)(2). In its response to Dep. Chapman's motion for bill of particulars, the State admitted that it is not alleging an affirmative duty that he intentionally refused or failed to perform (La. R.S. 14:134(A)(1)). This leaves only La. R.S. 14:134(A)(2) as an option for prosecution.

As stated above, and much like the exception of no cause of action in a civil matter, in considering a motion to quash a court ***must accept as true the facts*** contained in the bill of information (in this case, the bill of indictment) and the bill of particulars. In this case, ***the allegations*** are that Dep. Chapman is charged with malfeasance in office for intentionally performing a duty in an unlawful manner. Specifically, the State ***has alleged*** that Dep. Chapman returned to William Walls' home after Walls made the statement, "I have someone you can talk to, otherwise, you can get the f**k off my property," and that Dep. Chapman handcuffed Walls and detained him in Dep. Chapman's patrol unit. The State contends that William Walls' statement was a revocation of his previously given consent to enter Walls' residence, and that Dep. Chapman's re-entry of Walls' home

9

and his subsequent detainment of Walls was a violation of Walls' Fourth Amendment right to be free from unreasonable search and seizure. The State **has argued** that Dep. Chapman's actions as described above constitute violations of La. R.S. 14:63 (criminal trespass) and 14:35 (simple battery), and that those same actions violated Dep. Chapman's sworn duties to support the Constitution and laws of the United States and Constitution and laws of Louisiana and to faithfully and impartially discharge and perform all the duties incumbent on him.

Once the *facts* have been determined, the Court must determine as a matter of law and from the face of the pleadings whether a crime has been charged. This Court considers the underlying actions described by the State as true (as required when considering whether malfeasance in office has been properly charged), but **the legal conclusions asserted by the State**, that Dep. Chapman committed two misdemeanors, trespass and battery, and violated William Walls' Fourth Amendment rights, **are unproven at this point and as such, merely speculative**.

This Court does not see William Walls' statement through the same lens as does the State, i.e., as a revocation of consent previously given. In fact, there are multiple ways that Walls' outburst to Dep. Chapman could have been taken. The statement, "I have someone you can talk to, otherwise, you can get the f**k off my property," while likely verbally aggressive, gave Dep. Chapman a couple of options where reentry of Walls' residence was concerned, one of which was for the deputy to go back inside the home with Walls to speak to someone either on the phone or in person. Another was out of concern for the officers' safety, given the abrupt change in Walls' demeanor. Accepting Walls' statement at face value, the deputy's following

10

him back into the mobile home constitutes neither a criminal activity or an intentional act in direct violation of Dep. Chapman's duties as a law enforcement officer. Public safety requires some flexibility for police officers to investigate and prevent crime. *State v. Davenport*, 32,329 (La. App. 2 Cir. 9/22/99), 801 So. 2d 380; *State v. Wesley*, 28,012 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1257, *writ denied*, 96-1127 (La. 10/4/96), 679 So. 2d 1379. Dep. Chapman had a legal right to be on the premises. CPSO had received a tip that Deloach, who had an active arrest warrant, was at 14554 Pecan Road, which was William Walls' property. Walls had given consent to search his mobile home and had not revoked said consent, or had not done so unequivocally. Dep. Chapman did not arrest Walls, but merely detained him for officer safety so the deputies could effect a search of the second mobile home on the property.

Having reviewed the applicable law, the indictment and bill of particulars in this case, this Court finds that the trial court erred in denying Dep. Chapman's motion to quash. The State has failed to provide any affirmative, expressly written duty that was performed by Dep. Chapman in an unlawful manner beyond the general requirement to "uphold federal and state laws in the course and scope of employment." None of the allegations or actions as described by the State in its response to Dep. Chapman's motion for bill of particulars constitutes the unlawful performance of an affirmative duty, expressly written, that is imposed on Dep. Chapman as a public officer as required under the law.

In *State v. Hessler*, 570 So. 2d 95 (La. App. 4 Cir. 1990), the State argued that the police officer unlawfully violated his duty to "insure the health and welfare of … an arrested subject in [his] custody, was properly

11

maintained, and thereby result[ed] in a battery being committed" upon the arrestee. *Id.* at 96. The court in *State v. Hessler* found that no expressed duty existed, and the sworn oath of a police officer to ensure the health and welfare of arrestees was vague and not expressed as required. *Id.* at 97. In the instant case, as in *State v. Hessler*, *supra*, Dep. Chapman's "duty to uphold the Constitution and laws of the United States and the laws and Constitution of Louisiana," while written, do not create an affirmative duty *specific enough* to place any public officer on notice that handcuffing a person for officer safety during a consensual search for a subject with an outstanding arrest warrant based on a reliable tip or determining that consent to search has not been revoked in the midst of such a search in a situation such as that faced by Dep. Chapman, who was given an ambiguous, belligerent message subject to multiple interpretations after consent had been readily given, only one interpretation of which was the revocation of consent, will result of a charge of malfeasance in office.

We therefore grant the supervisory writ, reverse the judgment of the trial court denying the motion to quash, and remand the matter to the trial court for further proceedings consistent with this opinion.

**CONCLUSION**

For the reasons set forth above, the writ is granted, the judgment of the trial court denying the motion to quash is reversed, and the matter is remanded to the trial court.

**WRIT GRANTED; JUDGMENT REVERSED; REMANDED.**

**HUNTER, J., dissents with written reasons.**

I respectfully dissent.

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Similarly, Article I, § 5 of the Louisiana Constitution protects a citizen's right to privacy.

The State has alleged the defendant violated his sworn oath to uphold the constitution and laws of this State when he purportedly violated Walls' constitutional rights. The dying declaration of Walls, a private citizen, constituting a withdrawal of his consent, could not have been more evident, as he emphatically ordered the deputies to "Get the f**k off my property!" However, not only were Walls' directives ignored, but he was bound with handcuffs and placed in the back of a patrol car where he subsequently expired.

Despite the alleged actions of the defendant, the State, acting within its constitutionally derived discretion, chose to initially charge the defendant with the crime of malfeasance in office. The general public and the Courts have grown increasingly aware of the reluctance of prosecutors to charge government actors for any actions committed during the course and scope of their employment. The hesitancy to prosecute evidences the societal and jurisprudential tightropes each branch of government undertakes to understand the difficulties of the professions, protect the general public, as well as considering the actions of those acting in service thereof, and interpreting the laws informally for all citizenry without respect to position.

1

Any other efforts would ultimately contaminate and weaken the constitutional scheme under which America operates.

Would this privilege or protection have been afforded to regular citizenry, *i.e.*, would similar charges have been brought absent the public service component? If a private citizen had committed the actions defendant allegedly committed, would the charges range from aggravated kidnapping/battery (for handcuffing Walls and placing him in the back of a squad car while armed with a firearm) to negligent homicide (for Walls' demise)?

I am well aware of the difficulties, dangers, and stressors law enforcement encounters in the day-to-day service to our communities. Nevertheless, officers hold positions of trust which cannot be insulated from all criminal prosecution for violating the very laws they have been sworn to uphold and enforce.

The malfeasance in office statute is applicable to any and all public officers and employees. In *State v. Petitto*, 10-0581 (La. 3/15/11), 59 So. 3d 1245, a grand jury returned an indictment charging a parish councilman with two counts of malfeasance in office based upon violations of duties imposed on public officials under the provisions of the Code of Governmental Ethics. The trial court concluded the indictment failed to charge a valid offense, and the court of appeal affirmed. The Louisiana Supreme Court reversed, stating:

> The crime of malfeasance in office, which has been a part of Louisiana's penal laws for close to a century, is intended to protect the public by deterring public officers and employees from abusing their positions of public trust. The language of the malfeasance statute is comprehensive. The law applies to "*any* public officer or public employee" who intentionally refuses or fails to perform or who intentionally performs in an unlawful

2

manner "*any* duty lawfully required of him." In enacting this provision, the legislature deliberately chose not to specify or name a particular duty or duties, the abuse of which could lead to prosecution for malfeasance. This decision not to further define the duty element is understandable given the multitude of different public employees and officials covered by the statute. Indeed, it would be difficult, if not impossible, to construct a definition of duty that would encompass all the derelictions of duty the statute seeks to proscribe. Instead, the legislature chose to restrict the duty element of the crime to "any duty lawfully required" of the public officer or employee.

*Id*. at 1250 (internal citations omitted; emphasis in original).

This is not a novel issue. Police officers have been charged with, and convicted of, malfeasance in office for intentionally refusing or failing to perform their affirmative duties, or intentionally performing their duties in an unlawful manner.

In *State v. Coker*, 625 So. 2d 190 (La. App 3 Cir.), *writ denied*, 624 So. 2d 1204 (La. 1993), the Chief of Police of the town of Glenmora, Louisiana, was charged with malfeasance in office. Following his conviction, the defendant appealed, arguing, *inter alia*, the State failed to prove he was in violation of "a duty lawfully required of him" through (1) the introduction of a statute or provision of law which delineates an affirmative duty upon the official and (2) the showing that the duty was expressly imposed by law upon the official. The defendant contended a public official "can never be convicted of malfeasance unless a specific criminal statute exists which defines the conduct as malfeasance." *Id*. at 195. The defendant also argued none of the statutes or ordinances regarding the responsibilities of law enforcement officers could be considered "because they were not specifically included in the indictment or bill of particulars[.]" *Id*. at 196. In affirming the defendant's conviction, the court stated:

> [T]he defendant contends that a public official can never be convicted of malfeasance unless a specific criminal statute exists which defines the conduct as malfeasance. In the defendant's case, he asserts that he cannot be found guilty of malfeasance for maliciously battering helpless prisoners unless a statute exists which requires that "law enforcement officials shall ensure the safety, health and wellbeing of all citizens or persons in their presence or custody, and ensure no batteries are committed upon the person who is in their custody or presence." Such a requirement would render the offense of malfeasance meaningless and unenforceable. Utilizing the defendant's reasoning, every conceivable function and duty of a public official would have to be specifically included in a prohibitory statute in order to successfully "notify" the official of his potential liability for malfeasance. This is clearly impossible in practice and was obviously not the intent of the legislature when enacting the malfeasance statute.
>
> In fact, only two offenses are specifically delineated in Louisiana as constituting malfeasance. See La. R.S. 14:134.1 and La. R.S. 14:134.2. In all other cases, the specific duties required to support conviction for malfeasance are derived from other sources.

*Id*. at 195. The court further stated:

> We reject the defendant's contention that affirming the trial court's finding will subject police officers to criminal malfeasance prosecutions for all violations of the law. Clearly, the malfeasance statute requires that the offender be acting in his official capacity and engaged in the performance of a duty which is required by law, in order to support conviction. The jurisprudence indicates that prosecution for malfeasance is reserved for those cases in which a public official has blatantly abused the authority of his office and violates the public trust by his direct, personal acts or failure to act.

*Id*. at 197.

In *State v. Deville*, 94-0241 (La. App. 4 Cir. 10/27/94), 644 So. 2d 1117, the Chief of Police of Washington, Louisiana, was charged with (and subsequently convicted of) four counts of malfeasance in office. The defendant appealed his convictions, arguing neither indictment nor the evidence proved the affirmative duty expressly imposed by law with he

4

violated. Citing *State v. Perez*, 464 So. 2d 737 (La. 1985), and *State v. Coker*, *supra*, the court of appeal affirmed, stating:

> [T]he bill of information which included reference to defendant's oath of office properly charged the offense of malfeasance in office. In addition, we note the elementary fact that certain affirmative duties are inherent in the nature of the office. Certainly, police officers have the duty not to break the law when performing the duties of their office.

*Id*. at 1123.

The State asserted defendant committed the offense of malfeasance in office by intentionally performing his duties in an unlawful manner. Today, I believe the majority has usurped the role of the trial court. I see no abuse of the trial court's discretion in its determination the bill of indictment, which referenced a public officer's oath of office, charged defendant with an offense which is punishable under a valid statute. Consequently, I would conclude the judgment below does not require the exercise of this court's supervisory authority, recall the Court's order of April 26, 2023, as improvidently granted, and deny defendant's application for supervisory review.